CLARK et al., Appellants,

v.

ALLEN et al., Appellees.

[Cite as *Clark v. Allen,* 154 Ohio App.3d 200, 2003-Ohio-4617.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

No. CA2002-08-084.

Decided Sept. 2, 2003.

202

Monnie & O'Connor Co., L.P.A., and Laurence Joshua Davidson, for appellants, Christopher C. and Shirley Clark.

Kaufman & Florence, Mark T. Florence and C. Keith Nixon Jr., for appellees, Mathew and Betty Allen.

VALEN, Presiding Judge.

{¶ 1} Plaintiffs-appellants, Christopher C. Clark and Shirley Clark, appeal from a judgment of the Warren County Court of Common Pleas granting judgment in favor of defendants-appellees, Mathew and Betty Allen.

{¶ 2} On January 12, 2000, the Clarks filed a complaint against the Allens, alleging breach of contract, fraudulent misrepresentation, fraudulent conceal-ment, and fraudulent inducement in connection with the Allens' sale of a residence to the Clarks. Specifically, the Clarks complained that the Allens had misrepresented the condition of the crawl space underneath the house.

{¶ 3} The case was tried to the trial court on March 28, 2002. The evidence showed that the parties entered into a contract on December 29, 1996, for the sale of real estate located at 418 Monte Drive, Mason, Ohio. The sale was facilitated by Roger Yost, a dual real estate agent for the parties. Yost was Mathew Allen's former brother-in-law. Shirley Clark knew Yost and trusted him. Except for some inconsequential communication once at the residence and at closing, the parties never spoke to each other directly; all communications went through Yost. Attached to the sale contract was an Ohio Residential Property Disclosure Form filled out by Betty Allen and signed by the Allens in December 1995. The disclosure form, which was provided to the Clarks before closing, indicated by a box checked "yes" that the Allens knew of "any current water leakage, water accumulation, excess dampness or other defects with the basement/crawl space." The form did not describe what the defects were.

{¶ 4} The house was built in 1958 and first purchased by Mathew Allen in 1962. In the summer of 1994, the Allens had the house inspected for termites. Fred Goff, the termite inspector, did not find termites but found brown wood fungi on the floor joists in the crawl space. Goff did not see any standing water in the crawl space. He did, however, notice that the soil was damp. The moisture in the crawl space was not significant and was from sometime in the past. Some of the joists had damage from the moisture. Goff informed Mathew Allen about the fungi and the moisture. At his suggestion, the Allens had him spray the wood surfaces and install three air vents in the crawl space. So far as the Allens were aware, Goff's treatment had solved the problem of the fungi and moisture. Ladders stored in the crawl space were never wet. Betty Allen never noticed any problem with the floors of the house. As a result, the Allens checked the box on the disclosure form about the crawl space as a means to notify potential buyers that some work had been done there in the past. The Allens did not elaborate on the form as to the problem, as they believed it had been corrected.

{¶ 5} The check mark on the disclosure form prompted Shirley Clark to ask Yost about the crawl space. According to Shirley Clark, Yost told her that the Allens had a silicone treatment done, that it was a lifetime warranty, and that there would never be any water in the crawl space. Yost denied telling her that the crawl space had been treated with silicone or that it was a lifetime warranty. All he knew was that the crawl space had fungi, that it was sprayed, that three

vents had been installed, and that this would solve the problem. The crawl space was never treated with silicone. Such treatment does not exist.

{¶ 6} The parties' contract provided that "[i]nspections regarding the physical material condition and use of the Real Estate shall be the responsibility of the Buyer. Buyer is relying solely upon Buyer's examination of the Real Estate, * * * and inspections requested by the Buyer or otherwise required[.]" Although the Clarks had the opportunity to have a whole house inspection prior to closing, they did not request one. Likewise, although it was their first house with a crawl space, they did not personally inspect or look at the crawl space. Before closing, Shirley Clark visited the house four times. Each time, the house was completely empty. The Clarks had unimpeded access to the premises. Nothing prevented the Clarks from closely inspecting any part of the house. Apparently, Shirley Clark did not notice any problem with the house prior to closing.

{¶ 7} Following the closing, the Clarks discovered the following problems: (1) the master bedroom closet appeared crooked and had a big crack; (2) a new toe strip had been placed at the bottom of the old baseboard in the master bedroom concealing a separation between the baseboard and subfloor that when removed allowed one to see into the crawl space; (3) the master bedroom was "sinking"; and (4) the entire subfloor underneath the new linoleum in the utility room was wet and rotted. At that point in time, the Clarks both personally inspected the crawl space. Looking with a flashlight, Shirley Clark observed standing water, dampness, mold, and rotted beams. Going inside the crawl space, Christopher Clark observed some "brownish" on the joists and dampness. As a result, the Clarks had a whole house inspection as well as an inspection by a structural engineer. The Clarks spent over $22,000 repairing or replacing the beams in the crawl space and installing a sump pump.

{¶ 8} By decision filed July 2, 2002, the trial court found in favor of the Allens, stating: "We find that the [Allens] were not aware that there was serious rot/dampness problem in the crawl space. Also they did not instruct Mr. Yost to relay the false information to the [Clarks] nor were they aware that he had done so.

{¶ 9} "It is our conclusion that the [Clarks] cannot prevail here. Under the circumstances of this case we would describe the crawl space problem as a patent defect, i.e. one that was readily discoverable upon reasonable inspection. In light of the warning contained in the written disclosure statement and the fact that the [Clarks] had an opportunity to examine the matter themselves, and the further fact that the [Clarks] made no false or misleading statement themselves, the claim for fraud has not been established." On appeal, the Clarks raise four assignments of error.

{¶ 10} In their first assignment of error, the Clarks argue that the trial court issued inconsistent findings of fact that mandate the reversal of the trial court's decision.

{¶ 11} We begin with the proposition that a reviewing court should presume that a trial court's findings of fact are accurate, since the trial court is best able to view the witnesses, observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the witnesses. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273. Thus, we accept the trial court's findings of fact unless clearly erroneous. See *Willis Refrigeration, Air Conditioning & Heating, Inc. v. Maynard* (Jan. 18, 2000), Clermont App. No. CA99–05–047, 2000 WL 36102.

{¶ 12} The Clarks first take issue with the trial court's findings that (1) although the Allens "answered 'yes' without further elaboration" on the disclosure form as to whether they knew "of any current * * * water accumulation, excess dampness, or other defects with the * * * crawl space," (2) the Allens nevertheless "were not aware that there was serious rot/dampness problem in the crawl space."

{¶ 13} Upon closely reviewing the record before us, we find that these findings of fact are supported by the record and are not inconsistent. Upon learning about the fungi and moisture in the crawl space in 1994, the Allens had Goff spray wood surfaces and install three air vents in the crawl space. Following treatment, the Allens never noticed any problem with the floors. Prior to selling the house, Mathew Allen had not been in the crawl space for 30 years. However, ladders stored in the crawl space were never wet. As a result, the Allens believed that the fungi and moisture problems had been remedied. Betty Allen's testimony shows that she checked "yes" on the disclosure form regarding the crawl space, not because she knew of current problems but as a means to notify potential buyers that some work had been done in the crawl space in the past. The Allens did not elaborate on the form as to the warning, as they believed that the problem had been corrected. Goff testified that Betty Allen did not know how to elaborate on the warning, as the past problem was merely dampness and had been treated. We therefore find that those findings of fact do not warrant a reversal of the trial court's decision.

{¶ 14} The Clarks next take issue with the trial court's findings that (1) although the court first described "the crawl space problem as a patent defect," (2) it then stated that "[i]t might be reasonably argued that the crawl space problem was in fact a latent defect[.]"

{¶ 15} A patent defect is an open and observable defect that an ordinary prudent person would discover upon reasonable inspection. *Tipton v. Nuzum*

(1992), 84 Ohio App.3d 33, 38, 616 N.E.2d 265. The record shows that upon discovering problems in the master bedroom after closing, Shirley Clark was able to discover the damage in the crawl space when she looked into the space with a flashlight but without entering. Likewise, Christopher Clark was able to discover the damage by going into the crawl space despite his height (he is six feet five inches tall) and the size of the crawl space (18 inches rather than the standard 36 inches). We find that the trial court's findings are not inconsistent. While maybe inartfully drafted, the language used by the trial court shows that it was making an "in the alternative" argument, that is, "assuming, arguendo, that the defect was a latent defect" type of argument. The trial court went on to find that even if the crawl space problem was a latent defect, the Clarks' fraudulent-misrepresentation claim failed, as the Allens did not know about the problem. We therefore find that these findings do not warrant a reversal of the trial court's decision. The Clarks' first assignment of error is overruled.

{¶ 16} In their second assignment of error, the Clarks argue that the trial court erred by finding that they have failed to prove their fraud claim.

{¶ 17} An action for fraudulent misrepresentation requires proof of (1) a representation; (2) that is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. *Brewer v. Brothers* (1992), 82 Ohio App.3d 148, 153, 611 N.E.2d 492, citing *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 491 N.E.2d 1101.

{¶ 18} R.C. 5302.30 requires sellers of residential real estate to complete a disclosure form that informs potential buyers of "material matters relating to the physical condition of the property to be transferred, * * * the condition of the structure of the property, including the roof, foundation, walls, and floors[.]" R.C. 5302.30(D). However, sellers are required to disclose only those defects that are within their actual knowledge. Id.; *Good v. McElhaney* (Sept. 30, 1998), Athens App. No. 97 CA 41, 1998 WL 682328, at * 9. R.C. 5302.30(F) relieves sellers of liability for damages to the person or property "allegedly aris[ing] from any error in, inaccuracy of, or omission of any item of information required to be disclosed in the property disclosure form if the error, inaccuracy, or omission was not within the transferor's actual knowledge."

{¶ 19} In addition, sellers of residential real estate have no duty to inspect their property or otherwise acquire additional knowledge of the defects of their property. *Good* at * 9. The disclosure form is not a substitute for a careful

inspection by potential purchasers. Under the statute, the duty to conduct a full inspection falls on the purchasers, not the sellers. Id.

{¶ 20} Upon thoroughly reviewing the record, we find that the trial court properly granted judgment in favor of the Allens. Mathew and Betty Allen consistently testified that (1) following Goff's treatment of the crawl space, they believed that the problem of the fungi and moisture was corrected; (2) they did not know about the serious rot and dampness in the crawl space; (3) ladders stored in the crawl space were not wet; and (4) they never noticed any problem with the floors. Consequently, Betty Allen checked the box on the disclosure form about the crawl space to notify potential buyers that some work had been done there in the past, not because she and her husband knew of any current problems with the crawl space. The Allens did not know how to elaborate and as a result did not elaborate on the form as to the problem, as they believed that it had been corrected.

{¶ 21} Despite the language of the parties' contract warning the Clarks that they, as buyers, were relying solely upon their examination of the real estate and any inspections requested by them or otherwise required, and despite the fact that this was their first house with a crawl space, the Clarks never requested a whole-house inspection before closing. Likewise, they did not personally inspect the crawl space. The reasons given were that Shirley Clark did not know how to get into the crawl space, that she did not intend to go into a "real small * * * cold, dark place," and that her husband was too tall. Yet, upon discovering problems in the house after closing, Shirley Clark was able to look into the crawl space with a flashlight and her husband was able to get into the crawl space. This testimony shows that an ordinary inspection that included peering into the crawl space would have revealed the problems evident in the crawl space. The warning on the disclosure form, however, did prompt Shirley Clark to ask Yost about the crawl space. According to Shirley Clark, Yost told her that it had been treated with silicone, that there was a lifetime guarantee, and that the problem had been corrected.

{¶ 22} The Clarks argue that the Allens committed fraud by actively concealing the crawl-space damage. Specifically, the Clarks point to the following measures: (1) a toe strip that looked new had been placed at the bottom of the old baseboard in the master bedroom to conceal a separation between the baseboard and subfloor that when removed allowed one to see into the crawl space; (2) someone had applied a yellow foam in an effort to close the foregoing separation; (3) the new linoleum in the utility room was not glued but simply laid on the floor; and (4) the entire subfloor underneath the new linoleum in the utility room was wet and rotted.

{¶ 23} Betty Allen testified that (1) the toe strip was installed in the master bedroom several years before they sold the house to the Clarks; (2) the toe strip was installed because it looked better with it; (3) she has never seen the foam and does not know how it ended up behind the baseboard; (4) the linoleum in the utility room was replaced six years before the sale because a puppy had chewed the old linoleum; and (5) the new linoleum did not need to be glued, as it was held down by a washer and other items in the utility room. The Allens denied taking the foregoing measures in anticipation of selling the house. The record shows that Betty Allen provided different dates at trial and at her deposition regarding the linoleum and toe strip. However, when confronted at trial as to the conflicting dates, each time she explained when her testimony at trial was correct and when her testimony at deposition was correct.

{¶ 24} At trial, Christopher Clark acknowledged that (1) although damp, the crawl space had no standing water when he looked into it even though it had rained a lot; (2) one could see into the crawl space in the bedroom only after removing the baseboard, the toe strip, and the foam; and (3) one could see the damage to the subfloor in the utility room only after the upper layer of the floor was removed.

{¶ 25} Michael Montgomery, a structural engineer, testified that the crawl space was inspected for the Clarks in July 1997 (thus after closing) and again in July 2001. Between the two inspections, a vapor barrier had been installed and some of the joists had been replaced. Yet the crawl space was still damp. The joists that had not been replaced were rotted. Montgomery testified that (1) there was some extensive damage to the floor framing from moisture collection over 50 years; (2) moisture typically builds up when there is no vapor barrier in the crawl space; and (3) had the house been built originally with a vapor barrier, most of the repairs to the crawl space would not have been necessary. However, it was not typical to put a vapor barrier in houses with a crawl space built in the 1950s.

{¶ 26} Larry Ralph, whose company did some repairs to the crawl space, testified that the crawl space had rot, extreme at some places, mold, and mildew, and that all of the joists had some water damage. Ralph stated that the house had had a drainage problem from the time it was first built. Ralph further stated that the lack of a drainage system and the lack of evaporation control were typical for a house built in the 1950s. Nevertheless, asked whether the Allens should have been aware that there was moisture in the crawl space before they sold the house to the Clarks, Ralph replied, "I don't see how anyone could've lived in the home and not known."

{¶ 27} Upon reviewing the record, we find that there is no evidence that the Allens concealed the existence of the damage in the crawl space for the

purpose of misleading the Clarks. There is no evidence that the Allens made any false representations to the Clarks, including on the disclosure form. There is no evidence that the Allens knew that the treatment performed by Goff in the crawl space was inadequate or had been unsuccessful. We are mindful of Ralph's statement that the Allens should have known that the crawl space had moisture problems. Ralph's opinion, however, does not reveal that the Allens had actual knowledge of the moisture problems in the crawl space or that they purposely misrepresented or concealed them. See *Yahner v. Kerlin,* Cuyahoga App. No. 82447, 2003-Ohio-3967, 2003 WL 21714917; *Osinski v. Kornja* (Feb. 19, 1998), Cuyahoga App. No. 72129, 1998 WL 72484. The case was tried to the trial court, which was best able to view the witnesses, observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the witnesses. *Seasons Coal Co., Inc.,* 10 Ohio St.3d at 80, 10 OBR 408, 461 N.E.2d 1273. We therefore find that the trial court did not err by finding that the Clarks had failed to prove their fraud claim. The Clarks' second assignment of error is overruled.

{¶ 28} In their third assignment, the Clarks argue that the trial court erred when, pursuant to R.C. 4735.68(B), it found the Allens not liable for Yost's representations to the Clarks regarding the crawl space. The trial court found that since the Allens did not know about Yost's false statements, R.C. 4735.68(B) protected them from liability. The Clarks assert that because Yost was a dual agent, the trial court should have first considered R.C. 4735.68(A).

{¶ 29} We begin by noting that the record supports the trial court's finding that the Allens did not know about Yost's silicone and lifetime-warranty representations to the Clarks. There is also no evidence that the Allens told Yost that the crawl space had been treated with silicone or that the treatment had a lifetime warranty.

{¶ 30} R.C. 4735.68 governs the liability of a real estate agent and his or her client and states:

{¶ 31} "(A) A licensee [i.e., a real estate agent] is not liable to any party for false information that the licensee's client provided to the licensee and that the licensee in turn provided to another party in the real estate transaction, unless the licensee had actual knowledge that the information was false or acted with reckless disregard for the truth.

{¶ 32} "(B) No cause of action shall arise on behalf of any person against a client for any misrepresentation a licensee made while representing that client unless the client had actual knowledge of the licensee's misrepresentation."

{¶ 33} We agree with the trial court that pursuant to R.C. 4735.68(B), the Allens are not liable for Yost's representations to the Clarks regarding the crawl

space. As properly found by the trial court, the record shows that the Allens did not know about Yost's silicone and lifetime-warranty representations to the Clarks. R.C. 4735.68(A), in turn, clearly applies to a situation where a licensee is sued and where, inter alia, the licensee's client provided false information to the licensee. As previously noted, there is no evidence that the Allens told Yost that the crawl space had been treated with silicone or that the treatment had a lifetime warranty. In addition, although Yost was a dual agent who, as a result, was a fiduciary of both parties and required to act in the interest of both clients, R.C. 4735.62 and *Allison v. Cook* (2000), 139 Ohio App.3d 473, 487, 744 N.E.2d 254, the Clarks did not file a complaint against him. It follows that R.C. 4735.68(A) is not applicable in the case at bar. The Clarks' third assignment of error is overruled.

{¶ 34} In their fourth assignment of error, the Clarks argue that the trial court's decision is against the manifest weight of the evidence.

{¶ 35} App.R. 16(A)(7) requires that an appellant's brief contain the contentions of the appellant with respect to each issue presented for review and the reasons in support of the contentions, with citations of the authorities, statutes, and parts of the record on which appellant relies. This court may disregard an assignment of error if a party fails to argue an assignment of error as required under App.R. 16(A)(7). App.R. 12(A)(2); *Meerhoff v. Huntington Mtge. Co.* (1995), 103 Ohio App.3d 164, 169, 658 N.E.2d 1109. The Clarks not only failed to cite any legal authority supporting their claim under this assignment of error, they also failed to provide an argument in support of their claim. Accordingly, the Clarks' fourth assignment of error is overruled.

Judgment affirmed.

WILLIAM W. YOUNG and POWELL, JJ., concur.