OPINION
{¶ 1} Wayne Boggs and Brenda Burns-Boggs ("the Boggses") appeal from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment in favor of Lorene Howerton, Mark Bernard, and Prudential Residenz Realtors.
 {¶ 2} On September 27, 2003, the Boggses entered into a contract to purchase Howerton's home at 556 Brandwynne Court in Centerville. Mark Bernard, a realtor for Prudential Residenz Realtors, represented Howerton in the sale. The Boggses were provided with a Residential Disclosure Form on which Howerton had indicated that she was unaware of "the presence of any wood boring insects/termites in or on the property or any existing damage to the property caused by wood boring insects/termites." Howerton indicated on the form: "Home protected through A-Abel," a termite inspection and treatment company. Additionally, the form asked the homeowner to describe any inspection or treatment for wood boring insects/termites within the past five years. Howerton did not respond.
 {¶ 3} Pursuant to the purchase agreement, the Boggses were permitted to conduct various inspections, and they hired Fleenor's Termite and Pest Eliminators to conduct a termite inspection. Fleenor's report indicated that there was active termite infestation and that there was visible evidence of termite damage in the house. The report included a diagram indicating three locations where damage had been observed.Fleenor's report also cautioned that hidden damage may bepresent and that a "qualified individual" should determine theneed for repair.
 {¶ 4} After receiving Fleenor's report, the Boggses visited the home again with their realtor to inspect for active infestation and damage. Having only observed damage in the spots where Fleenor's report indicated that damage was present, they requested $200 from Howerton to make repairs and the installation of a Senticon Bait System. The Boggses also hired A-Abel to conduct a second termite inspection.
 {¶ 5} A-Abel completed its report two days before the closing was scheduled to occur. A-Abel found that there was termite damage and evidence of prior treatment for termites, but that the termites were "inactive." According to Bernard, he learned of this finding orally before the official report had been prepared, and he informed the Boggses' realtor, Susan Hogan, of this finding by phone. When the written report was prepared, a diagram contained therein indicated significantly more areas of termite damage than were reflected in Fleenor's report. The report also contained a warning identicial to Fleenor's that hidden damage may be present and that a "qualified individual" should determine the need for repair.
 {¶ 6} Bernard testified in his deposition that, when he received A-Abel's written report, he immediately delivered a copy to Hogan's office. Hogan claimed that she never received this report. Bernard also stated that he gave the Boggses a copy of the A-Abel report at the closing, and Burns-Boggs' signature is included on this document.
 {¶ 7} The closing occurred as planned on October 17, 2003. The next day, the Boggses went to the house to remove some wallpaper and found evidence of termite damage in the walls of the master bedroom, an area that had not been listed as a damaged area in Fleenor's report and that had appeared undamaged during their own inspection. They also found paperwork in the house related to A-Abel's prior treatment of the house in the early to mid-1990s and its continuing termite control warranty and annual inspection contract. They had not seen this paperwork prior to closing. The Boggses subsequently discovered that the termite damage to the home was much more extensive than they had believed.
 {¶ 8} On February 11, 2004, the Boggses filed a complaint against Howerton, Bernard, and Prudential for intentional and negligent misrepresentation. The defendants moved for summary judgment. In separate decisions, the trial court granted summary judgment on September 23, 2005 and October 18, 2005, which disposed of all the claims.
 {¶ 9} The Boggses raise three assignments of error on appeal.
 {¶ 10} I. "THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING SUMMARY JUDGMENT IN FAVOR OF ALL THE APPELLEES BASED ON THE HOLDING THAT CAVEAT EMPTOR APPLIED WHEN THERE IS A GENUINE ISSUE OF MATERIAL FACT REGARDING WHETHER THE DEFECT IN THE REAL ESTATE SOLD WAS OPEN AND OBVIOUS. THE EXTENT OF THE TERMITE DAMAGE TO THE HOME SOLD TO APPELLANTS WAS HIDDEN AND, THEREFORE, THE DOCTRINE OF CAVEAT EMPTOR DOES NOT APPLY."
 {¶ 11} Howerton relied on the doctrine of caveat emptor in defense of the Boggses' complaint, and the trial court relied on this doctrine in its decision. The Boggses claim that the doctrine of caveat emptor does not apply to shield Howerton from liability because the termite condition was not open and obvious and was not easily discoverable upon reasonable inspection.
 {¶ 12} The doctrine of caveat emptor has classically meant "Let the buyer beware." Layman v. Binns (1988),35 Ohio St.3d 176, 177, 519 N.E.2d 642. The doctrine precludes recovery by the purchaser for a structural defect in real estate so long as certain conditions are present to ensure that the doctrine operates fairly. Id. These conditions are: "(1) the condition complained of is open to observation or discoverable upon reasonable inspection; (2) the purchaser had the unimpeded opportunity to examine the premises; and (3) there is no fraud on the part of the vendor." Id. at syllabus, following Traverse v.Long (1956), 165 Ohio St. 249, 252, 135 N.E.2d 256. Once alerted to a possible defect, a purchaser may not simply sit back and then raise his lack of expertise when a problem arises. Aware of a possible problem, the buyer has a duty either to make further inquiry of the owner, who is under a duty not to engage in fraud, or to seek the advice of someone with sufficient knowledge to appraise the defect. Tipton v. Nuzum (1992), 84 Ohio App.3d 33,38, 616 N.E.2d 265; Duman v. Campbell, Cuyahoga App. No. 79858, 2002-Ohio-2253.
 {¶ 13} Fleenor's report informed the Boggses that there was active termite infestation in the house, that there were several areas of termite damage, and that a qualified individual should assess the damage. The report also indicated evidence of prior treatment for termites. In response, the Boggses themselves inspected the damaged areas described in Fleenor's report and requested a second inspection from A-Abel. They also requested the installation of a termite baiting system, and Howerton agreed to install such a system. For reasons that are not entirely clear from the record, the Boggses proceeded to close on the house without examining the A-Abel report. Howerton's realtor apparently conveyed to the Boggses' realtor, by phone, that A-Abel had found that the termites were "inactive," but they did not address the issue of damage in this conversation. The A-Abel report indicated the presence of significantly more termite damage than Fleenor's report.
 {¶ 14} The trial court concluded that the doctrine of caveat emptor precluded the Boggses' intentional misrepresentation claim. The court observed that the termite damage was discoverable upon reasonable inspection, as evidenced by Fleenor's and A-Abel's reports, and that the Boggses had failed to provide evidence that Howerton knew of any terminte infestation or damage. It also concluded that the Boggses had had ample opportunity to inspect the property or to have it inspected by others, and they had failed to heed the recommendations of both termite inspectors that additional inspections for structural damage be conducted. We agree that caveat emptor barred the Boggses' claim.
 {¶ 15} Fleenor's report put the Boggses on notice that there were termites and termite damage in the house. Their failure to pursue this matter further with a qualified damage inspector cannot reasonably be attributed to Howerton or Bernard in the absence of any evidence that either of them intentionally misled the Boggses about the presence of termites or termite damage. Moreover, we are of the view that the documents left in the house and the statements on the disclosure form were immaterial to the finding that caveat emptor applied. Fleenor's report, standing alone, gave the Boggses sufficient notice of termite activity and the need for an additional damage assessment to invoke the doctrine of caveat emptor and to preclude reasonable reliance on the disclosure form.
 {¶ 16} Furthermore, we note that the A-Abel documents found in the house after the closing did not refute Howerton's claim on the disclosure form that she was unaware of any existing termite damage, as the Boggses asserted in their briefs and at oral argument. These documents indicated that A-Abel had found no visible evidence of termites from 1997 to 2003 and did not contain any findings of damage from termites during that period. These documents support, rather than refute, Howerton's assertion in the disclosure form that she did not know of termites or termite damage in the house at the time of the sale.
 {¶ 17} In the application of caveat emptor, this case is similar to Kramer v. Raterman, 161 Ohio App.3d 363,2005-Ohio-2742, 830 N.E.2d 416, wherein a large retaining wall had been installed to address settling problems in the backyard of a house shortly after it was built. When they sold the house several years later, the sellers disclosed the earlier problems, provided paperwork about the wall that was installed by the builder, including design plans, and were upfront with the potential buyers about their earlier litigation with the builder over the need for the wall. The buyers inspected the wall themselves along with a relative who was a civil engineer but whose expertise focused on the design of roller coasters. The engineer concluded that the wall appeared to have been built according to the design plans. When the retaining wall collapsed five years later, the buyers sued the sellers, claiming that the latent defect in the wall was not discoverable by a reasonable inspection. The trial court apparently concluded that the defect could have been discovered if a reasonable inspection had been conducted and that the sellers had not intentionally misled the buyers. Accordingly, the court concluded that caveat emptor precluded the buyers' recovery.
 {¶ 18} Likewise, in Clark v. Allen, 154 Ohio App.3d 200,2003-Ohio-4617, 796 N.E.2d 965, buyers failed to inspect the crawl space of a house before purchasing it. The sellers had previously experienced fungus and moisture problems in the crawl space. The sellers believed that the problem had been corrected but had listed the problem on their disclosure form. The appellate court upheld the trial court's judgment in favor of the sellers because an inspection would have revealed the problems in the crawl space. See, also, Black v. Cosentino (1996),117 Ohio St.3d 40, 689 N.E.2d 1001; Duman, supra; Dupler v. Schwager,
Montgomery App. No. 19625, 2003-Ohio-5726; Seecharan v. Macy
(Oct. 28, 1999), Cuyahoga App. No. 75130; Spear v. MorelandHills (Jan. 15, 1998), Cuyahoga App. No. 72007.
 {¶ 19} The Boggses rely on our opinion in McCoy v. Good,160 Ohio App.3d 55, 2005-Ohio-1370, 825 N.E.2d 1165, for the proposition that responsibility for inspection should not shift to the buyer where the sellers have made an incomplete disclosure of a termite problem. The facts of McCoy are distinguishable, however. There, the sellers' disclosure statement indicated that the house had been treated for termites in one location in the past, that termite treatment had been completed seven years earlier, and that it had been "updated annually." In fact, the house had been treated for reinfestations at least twice subsequent to the time referenced on the disclosure form and the area that had been treated was much more extensive than indicated by the sellers. An additional treatment had been ordered the very month that the house was listed for sale. Under these circumstances, we concluded that a genuine issue of material fact existed as to whether the sellers had intentionally misled the buyers, and we rejected the sellers' argument that their incomplete disclosure had shifted all responsibility onto the buyers by giving them notice of the need for an inspection. There is not comparable evidence in this case that Howerton knew or attempted to mislead the Boggses about the termites in her house.
 {¶ 20} The first assignment of error is overruled.
 {¶ 21} II. "THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT NEITHER APPELLEE COMMITTED AN INTENTIONAL MISREPRESENTATION AGAINST APPELLANTS WHEN CRITICAL INFORMATION WAS WITHHELD BY BOTH APPELLEES PRIOR TO THE CLOSING AND APPELLANTS WERE NOT FULLY INFORMED OF THE DEFECTS IN THE PROPERTY AS REQUIRED BY LAW."
 {¶ 22} The Boggses claim that the trial court misconstrued the standard for intentional misrepresentation and that Bernard's failure to disclose the information in the AA-bel report created a genuine issue of material fact as to this claim. They also claim that Howerton committed intentional misrepresentation by stating that there had been no treatment for termites in the past five years and by failing (along with Bernard) to give them the A-Abel service documents that she had left in the house before the closing.
 {¶ 23} The elements of a cause of action for intentional misrepresentation are as follows: (a) a representation or, where there is a duty to disclose, concealment of a fact; (b) which is material to the transaction at hand; (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (d) with the intent of misleading another into relying upon it; (e) justifiable reliance upon the representation or concealment; and (f) a resulting injury proximately caused by the reliance. Carpenter v. Scherer-Mountain Ins. Agency (1999),135 Ohio App.3d 316, 327-328, 733 N.E.2d 1196, citing Burr v.Stark Cty. Bd. of Commrs. (1986), 23 Ohio St.3d 69,491 N.E.2d 1101.
 {¶ 24} With respect to Bernard's actions, the evidence offered for purposes of summary judgment established that Bernard and the Boggses' realtor, Hogan, had agreed that A-Abel would conduct the second termite inspection. A-Abel advised Bernard orally that it had concluded that the termites were inactive before preparing its written report, and he conveyed this information to Hogan by phone. Bernard and Hogan did not discuss what A-Abel had found with respect to existing damage, and it does not appear that Bernard knew anything about what damage A-Abel had found. When Bernard received the written report, he delivered a copy to Hogan's office. He apparently did not review the document carefully at that time. Although Hogan stated that neither she nor the Boggses had received a copy of the inspection report prior to the closing, the A-Abel report does contain Brenda Burns-Boggs's signature, dated the day of the closing.
 {¶ 25} It is undisputed that Bernard's conversation with Hogan about A-Abel's findings did not convey all of the information that was ultimately contained in the written report. However, there is no evidence that Bernard withheld or misrepresented the limited information that was available to him at the time of that conversation. Once the written report was available, it was the Boggses' responsibility to evaluate its content; Bernard did not have a duty to point out the additional information contained therein. The Boggses were on notice of termite activity and damage in the house, they had requested the second inspection, and they knew that the report had been completed prior to closing. The Fleenor report, which they had admittedly seen, recommended additional inspections due to the possibility of hidden damage. The Boggses acted at their own risk in failing to heed that advice before closing. The Boggses failed to create a genuine issue of material fact that Bernard had made a false statement with knowledge of its falsity or that they had justifiably relied on that statement. As such, the trial court did not err in granting summary judgment on the Boggses' intentional misrepresentation claim against Bernard.
 {¶ 26} With respect to Howerton and the A-Abel pest control service records that were found in the home after the closing, it is undisputed that Howerton made no representation to the Boggses with respect to these documents, and they have failed to establish any duty on her part to produce them. Furthermore, the Boggses did not show that the failure to produce these documents injured them. In her affidavit, Howerton stated that the documents reflected the contract she and her husband entered with A-Abel to protect the house from termites following a 1994 infestation. Significantly, this infestation was more than five years before she attempted to sell the house, and therefore was not subject to disclosure on the Residential Property Disclosure Form. Howerton stated that the 1994 infestation was confined to a window in the sunroom, which was subsequently replaced. The A-Abel documents indicated that its pest control service agreement with Howerton renewed annually and that the annual inspections from 1997 to 2003 showed no visible termite activity. Also, no existing damage to the property was indicated on these documents. Howerton expressly denied any knowledge of the presence of termites or of existing damage caused by termites when she listed her house. She stated that she left the documents in the house to make potential purchasers aware of the existing pest control service agreement, which continued for several more months and could be renewed by the new owners. In the absence of any genuine issue of material fact as to a duty or a misleading representation about the service documents, summary judgment on the claim against Howerton for fraudulent misrepresentation in failing to produce the service documents prior to closing was proper.
 {¶ 27} The second assignment of error is overruled.
 {¶ 28} III. "THE TRIAL COURT ERRED AS A MATTER OF LAW BY HOLDING THAT NEITHER APPELLEE COULD BE LIABLE FOR NEGLIGENT MISREPRESENTATION, WHEN BOTH APPELLEES SUPPLIED FALSE INFORMATION TO APPELLANTS AND SUCH ACTIONS MEET THE CRITERIA FOR NEGLIGENT MISREPRESENTATION."
 {¶ 29} The Boggses asserts that Bernard and Howerton negligently misrepresented information that was pertinent to the sale of Howerton's property.
 {¶ 30} One commits negligent misrepresentation when "in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, [he] supplies false information for the guidance of others in their business transactions, [and he] is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."Delman v. Cleveland Hts. (1989), 41 Ohio St.3d 1, 4,534 N.E.2d 835.
 {¶ 31} The Boggses assert that Bernard committed negligent misrepresentation in that he supplied false information by not completely disclosing what was in the A-Abel report prior to closing. As we discussed under the second assignment of error, Bernard and Hogan had a conversation about A-Abel's preliminary finding — which apparently did not include information about damage to the house — before the written report had been prepared. It appears that they had no further conversations about it after the written report was available. Once the written report was available to the Boggses, Bernard did not have a duty to point out to them the additional information contained therein. Furthermore, in light of the earlier Fleenor report about termite damage, the Boggses could not have reasonably relied on Bernard's silence at the closing as representing that the termite damage was limited to that described in the Fleenor report.
 {¶ 32} The Boggses also claim that Howerton committed negligent misrepresentation because her disclosure form affirmatively stated that there was no existing damage to the property by wood boring insects. This claim mischaracterizes the form, which clearly indicates that the statements are limited to the owner's actual knowledge. The form indicated, and Howerton reiterated by affidavit, that she did not "know of the presence of any wood boring insects/termites in or on the property or any existing damage to the property caused by wood boring insects/termites." Without evidence that Howerton did know or had reason to know, the Boggses failed to establish negligent misrepresentation. The Boggses would have us read this "affirmative statement * * * which was not true" as some type of a guarantee on Howerton's part, but the language of the disclosure form clearly precludes such an interpretation. Moreover, the Boggses could not have justifiably relied on Howerton's representation in the disclosure form about the absence of termite activity after they had received Fleenor's report. For these reasons, the Boggses failed to create a genuine issue of material fact as to negligent misrepresentation by Howerton.
 {¶ 33} The third assignment of error is overruled.
 {¶ 34} The judgment of the trial court will be affirmed.
Grady, P.J. and Fain, J., concur.