[Cite as *Evon v. Walters*, 2021-Ohio-3475.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

| | |
|---|---|
| DIANE EVON, | **CASE NO. 2020-G-0266** |
| Plaintiff-Appellant, | |
| - v - | Civil Appeal from the Court of Common Pleas |
| CRAIG WALTERS, et al., | |
| Defendants-Appellees. | Trial Court No. 2018 M 000946 |

## O P I N I O N

Decided: September 30, 2021
Judgment: Affirmed in part and reversed in part; remanded

*David M. Dvorin*, 30195 Chagrin Boulevard, Suite 300, Pepper Pike, Ohio 44124 (For Plaintiff-Appellant).

*Sean L. McGrane* and *Eleanor Marie Carney Hagan*, Squire Patton Boggs LLP, 4900 Key Tower, 127 Public Square, Cleveland, Ohio 44114 (For Defendants-Appellees).

THOMAS R. WRIGHT, J.

{¶1}   Appellant, Diane Evon, appeals the trial court's order granting summary judgment in favor of appellees, Craig and Michelle Walters.  We affirm in part and reverse in part.

{¶2}   In October 2017, Evon purchased 14 acres of farmland and improvements from the Walters for $360,000.00.  The property includes the main home, an attached apartment, and a barn.  The Walters had owned and resided on the property for approximately 16 years prior to the sale.

{¶3} In the first paragraph of the purchase and sale agreement, Evon agrees to accept the property in its "'as is' present physical condition." Another clause provides that the agreement is subject to multiple inspections (general home, septic system, water potability, well flow rate, radon, mold) by a qualified inspector of Evon's choice, and that Evon acknowledges it is her own duty to exercise reasonable care to inspect and make diligent inquiry of either the inspectors or the Walters regarding the condition and systems of the property. The Walters agreed to provide reasonable access to the property for any and all inspections. The property was inspected on at least four occasions before closing—by Evon and her teenage daughter; Chesterland Electric; Pillar to Post, a home inspection service; and a mechanic. The Walters also completed a Residential Property Disclosure Form ("RPD Form") in conjunction with the agreement.

{¶4} Evon filed suit for damages against the Walters in December 2018 alleging breach of contract, fraud, negligent misrepresentation, and unjust enrichment. Evon's claims are based on factual allegations that the Walters either failed to disclose, concealed, or misrepresented material defects on the property of which the Walters had actual knowledge.

{¶5} Specifically, Evon alleges that two months after purchasing the property, in December 2017, she "noticed a lack of appropriate drainage resulting in significant flooding and standing water throughout substantial portions of the Property that was not present at the time of Closing." Around the same time, she allegedly "discovered the existence of a second [water] well hidden beneath the mudroom of the house. Without previous knowledge of this concealed well, Ms. Evon believed the above-ground well located on the surface of the Property was the source of the water supply. It was not until

2

this late discovery that Defendants revealed the above-ground well previously believed to supply the water was actually disabled and the concealed under-ground well was the only functioning source of water supply." Evon further alleges that in January 2018, "certain pipes located on the Property began to freeze and burst resulting in water damage and the need for portable heaters and fans." Evon allegedly suffered substantial loss and subsequent remedial damages as a result of these issues. Evon also alleges false representations regarding the property's eligibility for the CAUV tax credit—an argument she did not address in summary judgment proceedings and has further abandoned on appeal.

{¶6} All of the purported misrepresentations, nondisclosures, or concealments relate to responses on the RPD Form provided to Evon in connection with the purchase and sale agreement. In relevant part, the Walters checked "No" responses to the following inquiries:

> **D) WATER INTRUSION**: Do you know of **any previous or current** water leakage, water accumulation, excess moisture or other defects to the property, including but not limited to any area below grade, basement or crawl space?
>
> **G) MECHANICAL SYSTEMS**: Do you know of any **previous or current** problems or defects with the following existing mechanical systems? * * * Plumbing (pipes).
>
> **I) UNDERGROUND STORAGE TANKS/WELLS**: Do you know of any underground storage tanks (existing or removed), oil or natural gas wells (plugged or unplugged), or abandoned water wells on the property?
>
> **K) DRAINAGE/EROSION**: Do you know of **any previous or current** flooding, drainage, settling or grading or erosion problems affecting the property?

3

Case No. 2020-G-0266

{¶7} After discovery and the taking of depositions, the Walters moved for summary judgment on each of the claims and causes of action, which Evon opposed. The trial court summarily granted the Walters' motion on August 31, 2020.

{¶8} Evon raises three assignments of error, arguing the trial court's order is erroneous because genuine issues of material fact exist concerning whether she suffered damages due to the Walters' allegedly false responses on the RPD Form:

> [1.] The Trial Court committed prejudicial error in granting summary judgment to Appellees when genuine issues of material fact exist as to whether Appellees are liable to Ms. Evon for falsely representing that they were unaware of flooding and drainage issues affecting the Property.

> [2.] The Trial Court committed prejudicial error in granting summary judgment to Appellees when genuine issues of material fact exist as to whether Appellees are liable to Ms. Evon for falsely representing that they were unaware of any previous or current problems or defects with the plumbing (pipes).

> [3.] The Trial Court committed prejudicial error in granting summary judgment to Appellees when genuine issues of material fact exist as to whether Appellees are liable to Ms. Evon for falsely representing that there was no abandoned water well at the Property.

{¶9} We review decisions awarding summary judgment de novo, i.e. independently and without deference to the trial court's decision. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996); *Peer v. Sayers,* 11th Dist. Trumbull No. 2011-T-0014, 2011-Ohio-5439, ¶ 27.

{¶10} Summary judgment is appropriate only when "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against

4

whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977), citing Civ.R. 56(C).  The initial burden is on the moving party to set forth specific facts demonstrating that no issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996).  If the movant meets this burden, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists for trial.  *Id.* at 293.

{¶11}  Unjust enrichment occurs when a person "has and retains money or benefits which in justice and equity belong to another."  *Hummel v. Hummel*, 133 Ohio St. 520, 528, 14 N.E.2d 923 (1938).  "There can be no recovery under the theory of unjust enrichment," however, "if there is an express agreement between the parties."  *Giles v. Hanning*, 11th Dist. Portage No. 2001-P-0073, 2002-Ohio-2817, ¶ 12, citing *Hughes v. Oberholtzer*, 162 Ohio St. 330, 123 N.E.2d 393 (1954).  Accordingly, Evon cannot succeed on her claim of unjust enrichment as a matter of law because the parties entered into a contract for the sale and purchase of the property.  Summary judgment is therefore proper on this cause of action.

{¶12}  Negligent misrepresentation is defined as:

> "'One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.'"

(Emphasis deleted.)  *Delman v. Cleveland Heights,* 41 Ohio St.3d 1, 4, 534 N.E.2d 835 (1989), quoting 3 Restatement of the Law 2d, Torts, Section 552(1) at 126-127 (1965).

5

Case No. 2020-G-0266

"Given the elements of negligent misrepresentation, this court has concluded that such a claim is considered a business tort that is not meant to have extensive application." *Li-Conrad v. Curran*, 2016-Ohio-1496, 50 N.E.3d 573, ¶ 26 (11th Dist.), citing *Middlefield Banking Co. v. Deeb,* 11th Dist. Geauga No. 2011-G-3007, 2012-Ohio-3191, ¶ 31-33. "We have also stated that, 'under Ohio law, the tort of negligent misrepresentation has no application to consumer transactions or typical business transactions.'" *Li-Conrad* at ¶ 26, quoting *Middlefield Banking* at ¶ 35. Therefore, the tort does not apply where there is no "fiduciary-like" relationship in which one party has a professional duty to provide dependable information to another. *Li-Conrad* at ¶ 26, citing *Middlefield Banking* at ¶ 36.

{¶13} Here, there is no fiduciary-like relationship between Evon and the Walters, as they are merely opposing parties in a real estate transaction. Evon did not hire the Walters to provide her with information. Accordingly, in light of the undisputed facts as to the relationship between the parties, Evon cannot succeed on her claim of negligent misrepresentation as a matter of law, and summary judgment is proper on this cause of action. *Li-Conrad* at ¶ 27.

{¶14} "Under Ohio law, the inclusion of an 'as is' clause has the effect of relieving the seller of the duty to disclose any defects. As a result, the buyer can no longer bring an action for fraudulent nondisclosure against the seller. * * * This court has also reached the same conclusion as to a claim for breach of contract." *Tutolo v. Young*, 11th Dist. Lake No. 2010-L-118, 2012-Ohio-121, ¶ 51-52, citing *Massa v. Genco*, 11th Dist. Lake No. 89-L-14-162, 1991 WL 26761, *2 (Mar. 1, 1991). Thus, the inclusion of the "as is" clause in the purchase agreement here precludes recovery on Evon's claims of breach

6

of contract and fraudulent nondisclosure. Summary judgment is therefore proper on these two causes of action.

{¶15} Nevertheless, the presence of the "as is" clause does not dispose of the seller's duty to refrain from committing affirmative acts of fraudulent misrepresentation or fraudulent concealment. *Tutolo* at ¶ 51, citing *Brewer v. Brothers*, 82 Ohio App.3d 148, 151, 611 N.E.2d 492 (12th Dist.1992); *Massa* at \*3. The elements of fraudulent misrepresentation are: (1) a representation, (2) material to the transaction at hand, (3) made falsely, either with knowledge of its falsity or with such utter disregard and recklessness as to its truth or falsity that knowledge may be inferred, (4) and made with the intent of misleading another into relying upon it; (5) justifiable reliance on the representation; and (6) injury proximately caused by the reliance. The elements of fraudulent concealment are essentially the same: (1) actual concealment of a material fact, (2) with knowledge of the fact concealed, (3) and with the intent to mislead another into relying upon it; (4) justifiable reliance on the concealment; and (5) injury proximately caused by the reliance. *Bencivenni v. Dietz*, 11th Dist. Lake No. 2012-L-127, 2013-Ohio-4549, ¶ 42-43.

{¶16} Sellers of residential property in Ohio are required to complete and deliver to each prospective purchaser a property disclosure form disclosing various "material matters relating to the physical condition of the property" and "any material defects in the property that are within the actual knowledge of the transferor." R.C. 5302.30(C) & (D). The statute also requires that any disclosure be made in "good faith," which is defined as "honesty in fact." R.C. 5302.30(E)(1) & (A)(1). "A seller's failure to disclose the information required by the disclosure form does not necessarily mean that the seller has

7

committed fraud; however, when the seller intentionally fails to disclose a material fact on the disclosure form with the intention of misleading the buyer, and the buyer relies upon the disclosure form, the seller is liable for any resulting injury." (Citation omitted.) *Gentile v. Ristas,* 160 Ohio App.3d 765, 828 N.E.2d 1021, 2005-Ohio-2197, ¶ 53 (10th Dist.).

{¶17} "However, the disclosure form is not a substitute for a buyer's inspection. The duty under the statute to conduct a full inspection falls upon the buyer, not the seller." *Pedone v. Demarchi,* 8th Dist. Cuyahoga No. 88667, 2007-Ohio-6809, ¶ 32, citing *Clark v. Allen,* 154 Ohio App.3d 200, 796 N.E.2d 965, 2003-Ohio-4617, ¶ 19 (12th Dist.) and R.C. 5302.30(D)(1) (requiring the disclosure form to state that it is not a substitute for any inspections and that the transferee is encouraged to obtain a professional inspection). When the buyer has had the opportunity to inspect the property, the buyer is charged with knowledge of the conditions that a reasonable inspection would have disclosed. *Pedone* at ¶ 33. Stated otherwise, if a reasonable inspection would have disclosed the alleged defect, and the buyer was not impeded in conducting an inspection, it cannot be said that the buyer justifiably relied on the property disclosure form. *See Bencivenni* at ¶ 54, citing *Gentile* at ¶ 63.

{¶18} Evon alleges that the Walters' responses on the RPD Form fraudulently misrepresented or concealed the following defects of which they had actual knowledge: (i) the property had experienced substantial flooding; (ii) the property had a latent defect with the plumbing fixtures; and (iii) the above-ground well was abandoned and decommissioned, and the property's water was sourced from a well beneath the house concealed by carpet flooring. It is undisputed that Evon was unimpeded in conducting

8

multiple inspections of the property, of her choosing and satisfaction, upon which the purchase agreement was also contingent.

{¶19} The Walters indicated on the RPD Form that the source of the water supply to the property was by "private well" and that they did not know of any "abandoned water wells on the property." There are in fact two water wells located on the property. One is outside, visible above ground, several hundred feet behind the main home. The other is located below ground, with the access beneath the carpet flooring of the mud room inside the main home. Electrical service was cut to the outside well sometime prior to the sale of the property to Evon, but the well was not capped. At the time of Evon's purchase, the inside well was the property's sole water supply.

{¶20} According to Evon, it was not until approximately two months after closing that she discovered the existence of the inside well beneath the carpet flooring and became aware that the outside well was not the source of water for the property. Evon hired an excavating company to dig a new trench to the garage and reconnect the outside well in order to provide water to her farm animals. A new pressure tank, well pump, and water outlet were installed. She submits it cost $4,875.00 to reconnect the well.

{¶21} The parties dispute whether the outside well was "abandoned" as a matter of law. The Walters rely on a definition found in a section of the Ohio Administrative Code; Evon relies on definitions used by the Ohio Water Resources Council and the Ohio Department of Natural Resources Division of Water and Soil Resources. We need not decide this dispute, however, as the definition of "abandoned well" is irrelevant to the crux of Evon's allegation—that the Walters concealed the source of the property's water supply.

9

{¶22} Based on the Walters' answers on the RPD Form, Evon contends she reasonably believed the visible outside well was the only well on the property and was the disclosed source of the water supply. This was critical to Evon's purchase of the property, as she intended to use the outside well to supply water to her farm animals. Evon argues summary judgment was inappropriate because she did not have actual knowledge that the outside well was not the disclosed source of the water supply and, because it was the only visible well, she was under no duty to further investigate the truth of the matter and was entirely justified in relying on the RPD Form.

{¶23} The Walters argue they did not have an affirmative obligation to disclose the location of the water wells on the property. Regardless, they note Evon's admission that she was given a topographical map of the property at closing. This hand-drawn map, prepared by North Coast Septic Systems, indicates the location of both wells—the word "well" is written inside the drawing of the main house, and the outside well is described as "old tank abandoned." The map was also publicly available and on file with the Geauga County Auditor's Office as of November 8, 2016, nearly one year prior to the sale. Given this evidence, Evon cannot establish that the Walters actually concealed or misrepresented the source of the property's water supply, and summary judgment is proper on this claim.

{¶24} Evon's third assignment of error is without merit.

{¶25} The Walters also indicated on the RPD Form that they did not know of any "previous or current problems or defects with the following existing mechanical systems: plumbing (pipes)." Evon alleges the Walters concealed a history of frozen pipes in the apartment attached to the main house, where she experienced an isolated incident in

10

January 2018. The Walters contend they experienced two incidents of burst pipes in the apartment during the 16 years they resided on the property—in March 2009 and March 2014—both of which occurred as a result of power outages. In 2016 they installed a new boiler and water tank to service the entire residential area and had not experienced any freezing or bursting issues with the pipes after that time. Thus, because they had not experienced any problems or defects with the existing piping systems, they argue their response was accurate. Regardless, Evon has not provided competent evidence that the Walters experienced a history of freezing or bursting such that the Walters' response on the RPD Form amounts to actual concealment or false representation of a problem or defect with the plumbing (pipes) system with the intent to mislead her into relying upon it. Thus, summary judgment is proper on this claim.

{¶26} Evon's second assignment of error is without merit.

{¶27} The property is comprised of 14 acres of farmland with a hayfield to the west of the main house. Evon alleges that two months after closing, in December 2017, she noticed "a lack of appropriate drainage resulting in significant flooding and standing water throughout substantial portions of the Property that was not present at the time of closing [in October 2017]." In November 2018, Evon began constructing a pond to remedy the "flooding," for which she claims damages of at least $27,000.00.

{¶28} The Walters had indicated on the RPD Form that they did not know of any "previous or current flooding, drainage, settling or grading or erosion problems affecting the property." Mr. Walters testified at his deposition that seasonal water accumulation would occur on the property in the area where Evon has since built the pond: "in the spring, when we had winter thaw and spring rains, there is a low area to the west of the

11

house that would occasionally hold water." The Walters argue, without authority, that the RPD Form does not require disclosure of "seasonal flooding." They further contend it was not a "problem affecting the property" because they were able to grow and cultivate hay in the western field between at least 2001 and 2014 in a manner sufficient to ensure the property's eligibility for the CAUV tax credit. Further, although Evon contends there was no standing water on the property prior to closing, the Walters argue that the low-lying nature of the hayfield was obvious and discoverable and that Evon admitted at her deposition that neither she nor her agents inspected the hayfield despite having unrestricted access to the property.

{¶29} Evon responds that there is no support for the Walters' argument that they were not required to disclose "seasonal flooding" and that it is indeed a "problem affecting the property." Evon directs the court to Mr. Walters' testimony about a conversation he had with a builder in 2015 pertaining to the potential construction of a second residence on the property. He stated the builder recommended it should be built on higher ground at the back of the property, rather than the low-lying area of the western hayfield, which Mr. Walters acknowledged would occasionally retain water for "a month or two" in the spring every year he lived at the property, from 2001 through 2017. Mr. Walter further acknowledged that it was standing water, "ankle deep," and it did not occur in the fall. Evon contends the flooding/drainage issue was material to her purchase of the property because she also cannot build on that portion of the land or use it for a paddock or pasture as she initially desired. She further argues that the obvious and discoverable low-lying nature of the hayfield does not necessarily mean the seasonal spring flooding and

12

drainage issues were obvious and discoverable at the time she purchased the property in the fall.

{¶30} Considering the evidence in the light most favorable to Evon, we conclude she established genuine issues of material fact as to the following: whether the Walters knowingly made a false representation regarding flooding/drainage issues, material to Evon's purchase of the property; whether a reasonable inspection at the time of purchase would have revealed the alleged flooding/drainage issues; and, therefore, whether Evon justifiably relied on the Walters' representation on the RPD Form. Accordingly, the trial court erred in granting summary judgment on Evon's claim for fraudulent misrepresentation as pertains to the alleged flooding/drainage issues.

{¶31} Evon's first assignment of error has merit to the extent indicated.

{¶32} The judgment of the Geauga County Court of Common Pleas is affirmed in part and reversed in part. The matter is remanded for further proceedings consistent with this opinion.

MARY JANE TRAPP, P.J.,

MATT LYNCH, J.,

concur.

Case No. 2020-G-0266