**KRAMER et al., Appellants,**

v.

**RATERMAN et al., Appellees.**

[Cite as *Kramer v. Raterman,* 161 Ohio App.3d 363, 2005-Ohio-2742.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–040344.

Decided June 3, 2005.

364

Christopher T. Laber, for appellants,

Cohen, Todd, Kite & Stanford and Michael R. Schmidt, for appellees Lawrence and Cynthia Raterman.

Reminger & Reminger Co., L.P.A., and Vincent P. Antaki, for appellees Douglas E. Rolfes and Hoeting Realtors, Inc.

DOAN, Presiding Judge.

{¶ 1} In 1978, defendants-appellees Lawrence and Cynthia Raterman purchased a house at 2827 Meigs Lane in Hamilton County. Brune–Harpenau–Torbeck Builders, Inc. ("BHT"), had constructed the residence. The house was built on a hillside. Backfill was used to create a level lot and a backyard that extended as much as 29 feet beyond the subdivision's engineering specifications. Erosion in the backyard had caused landslides to occur in 1974. The previous owners had complained to BHT. BHT had regraded the slope and leveled the backyard several times, the last time being shortly before the Ratermans bought the property.

{¶ 2} The Ratermans moved into the house in February 1978. Soon, they noticed erosion problems that led to a landslide in the backyard. BHT returned to regrade the property, but in August of 1978, the backyard again slid. Because of the continuing problems with the backyard, the Ratermans and their neighbor filed suit against BHT. The litigation continued over a period of seven years.

{¶ 3} Prior to and during the litigation, several geotechnical reports were issued that suggested that the property was unstable and that a retaining wall was required to solve the landslide problem. The Ratermans hired geotechnical engineer James E. Hough, who proposed eight possible solutions to "mitigate the landsliding condition." Ultimately, Hough recommended a drilled-pier retaining wall with concrete lagging. BHT retained the services of the H.C. Nutting Co. ("Nutting") to find a solution to the landslide problem. F.G. Mundstock, a geotechnical engineer with Nutting, suggested a driven H-pile retaining wall, which involved drilling large steel I-beams into the bedrock and connecting them with wood lagging.

{¶ 4} The Ratermans and their neighbor settled the lawsuit. Part of the settlement proceeds was paid to defendant-appellee the Hosea Company for the construction of a 200–foot–long H-pile-driven retaining wall as suggested by Mundstock. Hosea built the wall in 1988, and it remained in place without

incident, except for the replacement of some of the wood lagging, until August 2001.

{¶ 5} On February 4, 1996, the Ratermans executed an exclusive right-to-sell agreement with defendants-appellees Douglas E. Rolfes and Hoeting Realtors, Inc., for the sale of the Meigs Lane property. The Ratermans completed a residential property disclosure form pursuant to R.C. 5302.30. Paragraph I of the disclosure form stated, "DRAINAGE: Do you know of any current flooding, drainage, settling or grading problems affecting the property?" "No" was initially checked, then scratched out, and "Yes" was checked. The words "settling or grading" were circled, with an arrow pointing to the next paragraph of the disclosure form, which stated, "If owner knows of any repairs, modifications or alterations to the property or other attempts to control any flooding, drainage, settling or grading problems since owning the property (but not longer that the past 5 years), please describe." In the place provided for an explanation, Rolfes wrote, "Retaining wall was installed along rear of property by builder and developer to control initial settling of backyard. Seller has paperwork." The paperwork included the design plans for the wall and a sewer easement. The geotechnical reports were not included in the paperwork.

{¶ 6} Plaintiffs-appellants Kenneth G. and Lisa R. Kramer viewed the Meigs Lane property at an open house and later with a real estate agent. The Kramers observed a "large retaining wall." Kenneth Kramer described seeing a "two hundred foot wall holding up the rear of the yard." The wall had visible "massive I-beams" and "wood lagging." Kenneth Kramer stated that he had seen the same type of retaining wall along highways. During the Kramers' inspections of the property, Lawrence Raterman told Kenneth Kramer in general terms about the lawsuit that had led to the construction of the wall. Prior to the closing on the house, Lawrence Raterman showed Kenneth Kramer the design plans for the wall.

{¶ 7} Kenneth Kramer conducted the whole-house inspection himself. He brought his brother-in-law, Larry Bill, a civil engineer who primarily designed roller coasters, to inspect the retaining wall. Bill inspected the wall for about 30 minutes and stated that it appeared to be built according to the design plans shown to the Kramers by the Ratermans. Bill did not ask questions about the design of the wall because, according to Kenneth Kramer, Bill's knowledge about construction of that type of wall was limited.

{¶ 8} The Kramers purchased the Meigs Lane property on April 1, 1996, pursuant to a contract executed in February 1996. The Kramers acknowledged in the purchase contract that they had received the disclosure form from the Ratermans. In September 2001, the retaining wall collapsed.

{¶ 9} The Kramers filed suit, seeking damages for the collapse of the retaining wall. Service was never perfected on Hosea, a dissolved corporation. The trial court dismissed the claims against Hosea pursuant to Civ.R. 4(E) and 41(B)(1). All other defendants filed motions for summary judgment, which the trial court granted. The Kramers have appealed.

{¶ 10} The first assignment of error alleges that the trial court erred in granting summary judgment in favor of the Ratermans, Rolfes, and Hoeting.

{¶ 11} Summary judgment is appropriate when no genuine issue of fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and it appears, with the evidence construed most strongly in favor of the party opposing the motion, that reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party. See Civ.R. 56(C); *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. An appellate court reviews the granting of summary judgment de novo. See *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 738 N.E.2d 1243.

{¶ 12} The Kramers argue that the Ratermans failed to disclose the true nature of the problem with the backyard landslides. The Kramers further argue that the extent of the landslide problem was a latent defect not readily discoverable by a reasonable inspection. The Kramers allege that the evidence raised genuine issues of material fact as to whether the Ratermans intended to hide the true nature of the landslide problem and to "purposely conceal and manipulate information in order to dissuade the Kramers from further inquiry."

{¶ 13} "The doctrine of caveat emptor precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor." See *Layman v. Binns* (1988), 35 Ohio St.3d 176, 519 N.E.2d 642, syllabus. The rule of caveat emptor makes buyers responsible for discovering patent defects. *Layman v. Binns,* supra. A seller may be liable for failing to disclose a latent defect when he has a duty to disclose. See id. The seller has a duty to disclose material facts that are not readily observable or discoverable upon reasonable inspection. See id.

{¶ 14} R.C. 5302.30 requires sellers of real estate to disclose certain defects within their actual knowledge on a residential property disclosure form. The statute requires that the disclosure be made in good faith, which "means honesty in fact in a transaction." R.C. 5302.30(A)(1). "While the doctrine of caveat emptor still applies to the sale of residential real property in Ohio, the seller of that property must disclose latent defects that are not readily observable or discoverable." *Juan v. Harmon* (Mar. 5, 1999), 1st Dist. No. C–980587, 1999

WL 110696. If the seller fails to disclose a material fact on the disclosure form with the intention of misleading the buyer and the buyer relies on the form, the seller is liable for any resulting injury. See id. However, the disclosure form is not a substitute for a buyer's inspection. See *Clark v. Allen*, 154 Ohio App.3d 200, 2003-Ohio-4617, 796 N.E.2d 965. The duty under the statute to conduct a full inspection falls upon the buyer, not the seller. See id.; R.C. 5302.30(D). "When a plaintiff claiming fraud in the sale of property has had the opportunity to inspect the property, he is charged with knowledge of the conditions that a reasonable inspection would have disclosed." *Nunez v. J.L. Sims Co., Inc.*, 1st Dist. No. C–020599, 2003-Ohio-3386, 2003 WL 21473328.

{¶ 15} In *Clark v. Allen*, supra, the buyers filed suit against the sellers of a residence, alleging that the sellers had misrepresented the condition of a crawl space under the house. The disclosure form indicated that the sellers knew of "current water leakage, water accumulation, excess dampness or other defects with the basement crawl space." The form did not disclose the defects. The evidence showed that, at some point while the sellers were still living in the house, brown wood fungi and moisture had been found in the crawl space. The sellers had had the wood surfaces sprayed and vents added to the crawl space. The sellers believed that the problem had been solved. They had listed the problem on the disclosure form in order to notify potential buyers that some work had been done in the past in the crawl space. The buyers did not request a full-house inspection, and they did not look into the crawl space. After moving into the house, the buyers discovered extensive water problems in the crawl space. The buyers argued that the sellers had actively concealed the condition of the crawl space. The appellate court upheld the trial court's judgment in favor of the sellers because an ordinary inspection would have revealed the problems in the crawl space.

{¶ 16} In *Riggins v. Bechtold*, 1st Dist. No. C–010541, 2002-Ohio-3291, 2002 WL 1391458, the sellers disclosed that the house had "settlement cracks and a crack in the breakfast room wall." After purchasing the house, the buyers hired a whole-house inspection service, which reported no structurally significant cracks. During a heavy rain about six months after the buyers moved into the house, they noticed water damage in the windows of the sunroom and elsewhere. A second inspection revealed holes in the mortar of the home's brick façade and significant settling and cracking in the breakfast nook. In upholding the trial court's granting of summary judgment in favor of the sellers, we held that the evidence showed that (1) the sellers had disclosed the latent defects of which they were aware, (2) the holes in the mortar were obvious, (3) the buyers had an unimpeded opportunity to inspect the house, and (4) the material defects were either disclosed or obvious upon reasonable inspection.

{¶ 17} The sellers in *Funk v. Durant*, 155 Ohio App.3d 99, 2003-Ohio-5591, 799 N.E.2d 221, made verbal and written disclosures about water seepage in the basement. The buyers examined the property three times and on one occasion brought a family friend who had begun a home-inspection business. The buyers noticed indications of previous water problems in the basement. The disclosure form did not accurately list all the prior occasions of water seepage, but the buyers were aware of the inaccuracies. On the third day after the buyers moved into the residence, the basement leaked during a heavy thunderstorm. The appellate court held that the open and obvious evidence of basement water problems had put the buyers on notice of the leaking.

{¶ 18} The appellate court in *Black v. Cosentino* (1996), 117 Ohio App.3d 40, 689 N.E.2d 1001, upheld the trial court's granting of summary judgment in favor of the sellers of a home. On a checklist, the sellers had marked a "yes" box, indicating water problems in the basement, and stated, "Waterproofed 1984." The sellers indicated the presence of a sump pump. They also indicated that they did not know of any current problems. In upholding the judgment for the sellers, the appellate court held that once the buyers had been alerted to the water problems in the basement, they had had the opportunity to arrange for an inspection. Because the conditions evidencing dampness were open and obvious, the sellers were not liable for the water problems experienced by the buyers.

{¶ 19} In *Spear v. Moreland Hills* (Jan. 15, 1998), 8th Dist. No. 72007, 1998 WL 12369, the buyer of a home sued the seller, Cuyahoga Savings, when he experienced landslides over a period of seven years that culminated with his home resting near a precipice and swaying on its foundation. When the seller had owned the property, an expert had been hired to inspect for potential erosion problems. The expert wrote a report for the seller that noted a long-term problem with "massive slippage" that could eventually threaten the house. The buyer's home inspector's report referred to the erosion and recommended that an "erosion expert" be consulted regarding the slipping of the rear of the property. After learning the cost involved, the buyer decided not to hire an erosion expert. The appellate court held that the buyer was not entitled to rely on his own interpretation of the seller's inspection report. The buyer had had every opportunity to inspect the property after being put on notice of erosion problems, and, therefore, he could not recover from the seller.

{¶ 20} Courts have held that even when structural defects are described in less severe terms than what is actually true, notice to the buyer of the defect precludes claims of fraud and misrepresentation. See *Dupler v. Schwager*, 2d Dist. No. 19625, 2003-Ohio-5726, 2003 WL 22429101 (sellers stated on disclosure form that the house had "small leaks." Buyers experienced leaking greater than expected throughout the basement. Buyers were not entitled to recover for

damage because there was no evidence that the sellers had not disclosed in good faith, the buyers had inspected the house five times, and a whole-house inspection had noted "no visual evidence of water penetration"); *Buchanan v. Geneva Chervenic Realty* (1996), 115 Ohio App.3d 250, 685 N.E.2d 265 (sellers indicated on disclosure form that "seepage" had occurred in the basement, which flooded during a storm after the buyers had moved into the home. Buyers could not recover because they had had unimpeded access to the property for inspection, they had visited the property several times, and they had had the property inspected); *Quintile v. Hartley* (Apr. 12, 2000), 9th Dist. No. 2993–M, 2000 WL 372319 (buyers could not recover for defects not disclosed on form because the defects were observable with careful inspection, the buyer had had an opportunity to inspect the property, and the disclosure form listed symptoms of the defects that were not readily apparent, leading a reasonable person to know further inspection was warranted); *Good v. McElhaney* (Sept. 30, 1998), 4th Dist. No. 97 CA 41, 1998 WL 682328 (sellers were not liable for foundation damage not disclosed on form when the damage was open to observation and the buyers were not justified in relying upon statements in the form. Further, buyers could not recover for nondisclosure of patent defects); *Osinski v. Kornja* (Feb. 19, 1998), 8th Dist. No. 72129, 1998 WL 72484 (buyers could not recover for leaky basement when sellers had indicated on disclosure form that they did not know of any current water leakage or damage, because reasonable inspection could have detected the likelihood of past and future water leak).

{¶ 21} The evidence in the instant case establishes that the Ratermans disclosed that the retaining wall had been built to solve problems with settling in the backyard. The Kramers observed a 200–foot–long retaining wall with "massive I-beams and wood lagging holding up the rear of the backyard." Kenneth Kramer stated that he had seen that type of retaining wall along highways. Prior to the closing, Lawrence Raterman told Kenneth Kramer that he should periodically check the wood lagging for rot. The Kramers were aware that the wall had been built as part of the settlement of a lawsuit over the backyard erosion problems. The Kramers had visited the property on several occasions. They were not limited in their inspections of the property. Kenneth Kramer had Larry Bill inspect the wall even though Bill's knowledge of the construction of that type of retaining wall was limited. Lawrence Raterman showed Kenneth Kramer and Larry Bill the design plans for the wall. Bill noted that the wall appeared to be built to the plan specifications. The Kramers chose not to have an expert inspect the wall or to report on the potential for more damage to the backyard.

{¶ 22} The Kramers clearly had notice of the erosion and slippage in the backyard. They were not impeded in their inspection of the property. We hold

that the Ratermans disclosed the defects as required by law. The Kramers chose not to have an expert inspection of the property where one was clearly warranted. Therefore, they could not claim justifiable reliance on any representations made by the Ratermans. The trial court did not err in granting summary judgment in favor of the Ratermans.

{¶ 23} We further hold that the trial court did not err in granting summary judgment in favor of Rolfes and Hoeting. The disclosures required by law were made by the Ratermans. Kenneth Kramer stated that he and his wife never spoke to Rolfes. Further, the purchase agreement provided "Inspections regarding the physical material condition and use of the Real Estate shall be the responsibility of the Buyer. Buyer is relying solely upon Buyer's examination of the Real Estate, the Seller's certification herein, and inspections herein requested by the Buyer or otherwise required, if any, for its physical condition and character, and not upon any representation by the Realtors involved who shall not be responsible for any defects in the Real Estate."

{¶ 24} There is no evidence in the record that either Rolfes or Hoeting made any representations to the Kramers or that the Kramers justifiably relied on any such representations. See *Belluardo v. Blankenship* (June 4, 1998), 8th Dist. No. 72601, 1998 WL 289397. The first assignment of error is overruled.

{¶ 25} The second assignment of error alleges that the trial court erred in dismissing the claims against Hosea without prior notice to the Kramers' counsel.

{¶ 26} In its entry granting summary judgment in favor of the other defendants, the trial court stated that it was dismissing the claims against Hosea "without prejudice pursuant to Civ.R. 4(E) and 41(B)(1)" because Hosea had not been served with the summons and complaint. Civ.R. 4(E) provides, "If a service of the summons and complaint is not made upon a defendant within six months after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion." Civ.R. 41(B)(1) provides, "Where the plaintiff fails to prosecute, or comply with these rules or any court order, the court upon motion of a defendant or on its own motion may, after notice to the plaintiff's counsel, dismiss an action or claim." The Ohio Supreme Court has stated, "[W]here the facts indicate that a plaintiff has not acquired service on the defendant, the court may characterize its dismissal as a failure to prosecute pursuant to Civ.R. 41(B)(1), or as a failure to obtain service under Civ.R. 4(E), but the dismissal under either rule will be otherwise than on the merits under Civ.R. 41(B)(4)." *Thomas v. Freeman* (1997), 79 Ohio St.3d 221, 680 N.E.2d 997.

{¶ 27} Civ.R. 4(E) and 41(B)(1) expressly require that notice be provided to a plaintiff before the trial court dismisses an action on its own motion, even where the dismissal is without prejudice. *Jefferson v. Eboh* (Mar. 14, 1994), 3d Dist. No. 9–93–53, 1994 WL 83415; *DiBeneditto v. Pelican Beach & Golf Club, Inc.* (Oct. 1, 1992), 8th Dist. No. 62870, 1992 WL 252307; *Davis v. Holsinger* (June 15, 1989), 10th Dist. No. 89AP–79, 1989 WL 65445; see, also, *Perotti v. Ferguson* (1983), 7 Ohio St.3d 1, 7 OBR 256, 454 N.E.2d 951; *Svoboda v. Brunswick* (1983), 6 Ohio St.3d 348, 6 OBR 403, 453 N.E.2d 648; *Drescher v. Summers* (1986), 30 Ohio App.3d 271, 30 OBR 469, 507 N.E.2d 1170. The trial court erred in sua sponte dismissing the claims against Hosea without giving the Kramers notice of its intention to dismiss. The second assignment of error is sustained.

{¶ 28} The portion of the trial court's judgment dismissing the claims against Hosea is reversed, and this cause is remanded for further proceedings on those claims. The trial court's judgment is affirmed in all other respects.

Judgment affirmed in part
and reversed in part,
and cause remanded.

HILDEBRANDT and HENDON, JJ., concur.