**[Cite as *Dansberry v. Mercy Health*, 2022-Ohio-360.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| WANDA C. DANSBERRY, | : | APPEAL NO. C-210304 |
|  |  | TRIAL NO. A-2001336 |
| Plaintiff-Appellant, | : |  |
|  | : | *O P I N I O N.* |
| vs. | : |  |
|  | : |  |
| MERCY HEALTH – WEST PARK, | : |  |
| MERCY FRANCISAN SENIOR HEALTH AND HOUSING SERVICES, INC., | : |  |
|  | : |  |
| TRANSPORT DRIVER BRYAN DOE, | : |  |
| JOHN DOE TRANSPORT COMPANY, | : |  |
| and | : |  |
| OHIO DEPARTMENT OF MEDICAID, | : |  |
|  | : |  |
| Defendants-Appellees. | : |  |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: February 9, 2022

*Blake R. Maislin, LLC,* and *Thomas J. Dall, Jr.,* for Plaintiff-Appellant,

*Rendigs, Fry, Kiely, & Dennis, LLP, Jeffrey M. Hines* and *W. Jonathon Sweeten,* and *Dave Yost,* Ohio Attorney General, and *Joseph M. McCandlish, Assistant Attorney General* for Defendants-Appellees.

**BERGERON, Judge.**

{¶1} Discovery is designed to facilitate the search for truth by forcing both parties to put their cards on the table; it is not meant to be a shell-game for obfuscation and obstruction. After plaintiff-appellant Wanda Dansberry suffered injury while being transferred between medical facilities and brought suit, defendant-appellee Mercy Health-West Park ("Mercy") stymied all of her efforts to discover the identity of the individual transporting her on the day in question (and who allegedly caused her injury). Mercy offered inconsistent and evasive discovery responses, and even avoided compliance with its discovery obligations in the face of an order granting a motion to compel. The trial court nevertheless granted summary judgment in Mercy's favor and denied Ms. Dansberry additional time to obtain answers to her discovery requests, but in so doing, the trial court relied on a key factual premise that Mercy now admits is inaccurate. Because Ms. Dansberry is entitled to additional time to conduct discovery—as well as to actual responsive answers from Mercy—we reverse the trial court's denial of her Civ.R. 56(F) motion and remand for further proceedings.

I.

{¶2} In August 2018, Ms. Dansberry underwent a hip replacement surgery that required a subsequent long-term stay at defendant-appellee Mercy's assisted living and rehab facility. Prior to the hip replacement, Ms. Dansberry required regular foot care at a wound care clinic for pressure sores she developed on her left foot as a result of diabetes. While residing at Mercy during recovery from the hip replacement, Mercy had Ms. Dansberry transported to her regularly-scheduled appointments at the wound care clinic. During one of these trips to visit her foot

doctor, Ms. Dansberry's left foot got caught on something, possibly a wheel on her wheelchair, and she suffered a broken bone and a sliced Achilles tendon. The individual transporting Ms. Dansberry at the time, and the alleged cause of her injury, is presently unknown but Ms. Dansberry recalled he had the name "Bryan" on his shirt, and he had driven her before. She also provided a physical description of "Bryan."

{¶3}  Almost two years later, Ms. Dansberry sued Mercy, the unknown transport driver, the unknown transport company, and the Ohio Department of Medicaid for negligence; negligent hiring, training, and retention; negligent supervision; and respondeat superior. Mercy countered that Ms. Dansberry's claim sounded in medical negligence under R.C. 2305.113, not ordinary negligence, and that Mercy should be granted summary judgment because the one-year statute of limitations had expired. It is possible that Mercy may well be correct on that point. Unfortunately, Mercy refuses to this day to answer the critical question: Who is the unknown transport driver, believed to be named Bryan, and for whom does he work?

{¶4}  During her deposition, Ms. Dansberry described the person transporting her as "first name Bryan, ponytail, white guy, 5'8" or 5'9", thin." She indicated that Bryan was not wearing a uniform, just jeans and a name tag on his shirt. She could not recall whether the name tag was separate from his shirt or sewn onto the shirt. When asked if she observed a logo or anything with his name tag that indicated who Bryan worked for, Ms. Dansberry responded, "I don't remember."

{¶5}  As is appropriate, Ms. Dansberry attempted to ascertain this person's identity through discovery. In her first set of interrogatories, Ms. Dansberry asked Mercy to provide the name, job title, last known address, and cell phone number of

the individual and entity transporting her on the day of her injury. Mercy complained that the interrogatory was vague, ambiguous, confusing, assumed facts not in evidence, and did not provide sufficient information to allow Mercy to formulate a reasonable response. Those objections strike us as inappropriate in light of the clarity of Ms. Dansberry's question—we certainly see nothing "vague," "ambiguous," or "confusing" in asking who allegedly caused her injury. Ms. Dansberry was simply trying to get to the bottom of an issue critical to the disposition of her lawsuit, which is the very reason we have discovery.

{¶6} After reciting those objections, Mercy cryptically offered: "[d]efendants do not believe that there was a third party involved in the transportation." But if Bryan didn't work for a third-party, that meant he worked for Mercy, and Mercy surely should have been able to provide Ms. Dansberry with the information she sought. But it didn't. Although Ms. Dansberry (perhaps anticipating discovery obstructionism) asked the same essential question in a number of different ways along with a variety of other questions designed to understand Bryan's training, background, etc., Mercy responded in Kafkaesque fashion, offering a blizzard of objections, pointing back to other non-answers, and essentially refusing to answer the basic question at the heart of this case.

{¶7} Undeterred, Ms. Dansberry went back to the drawing board and tried again, submitting a second set of interrogatories and requests, trying to frame the question in non-objectionable ways that would elicit a direct answer. Email correspondence between the parties detail counsel's growing frustration trying to procure an answer to the seemingly simple question of who drove her and pushed the wheelchair. To that end, Ms. Dansberry attached a third discovery request

4

whittled down to only one interrogatory and one request for documents: identify the people authorized to transport patients to and from medical appointments during August 2018, and provide their employment files. Both the second and third sets of interrogatories went unanswered. In opposition to Mercy's motion for summary judgment, Ms. Dansberry noted that a slew of her discovery requests remained outstanding or flat-out ignored, rendering summary judgment inappropriate. Almost a year after filing her complaint, Ms. Dansberry sat no closer to divining the name and employment status of the person who transported her and allegedly caused her injury.

{¶8} Ms. Dansberry filed a motion to compel along with a Civ.R. 56(F) request for additional time to respond to the motion for summary judgment, asking the court to force Mercy to follow through on what can only be construed as basic discovery obligations: Provide full answers to the first set of interrogatories. Provide *any* answer to the second set of interrogatories. And the third. Make the charge nurse on duty that day available for deposition. Designate a corporate representative and make that person available for deposition. Disclose the name of the person pushing the wheelchair when Ms. Dansberry was injured (presumably named Bryan, and who may or may not be a Mercy employee) and provide their contact information. The trial court, recognizing that the identity and employment affiliation of the individual who placed Ms. Dansberry in the van was necessary to resolve the motion for summary judgment, ordered Mercy to disclose who transported Ms. Dansberry at the time of the injury and to answer the second and third interrogatories.

{¶9} At this point, under compulsion of a court order, one might have expected that Ms. Dansberry would finally receive the answers she sought. Instead, the same pattern continued. For the second interrogatory, in response to the straightforward query of who transported Ms. Dansberry to Mercy Hospital on August 2, 2018, Mercy responded "unknown." In response to whether the person was an employee of Mercy, Mercy asserted it did not believe so (seemingly contradicting its answer in the first set of interrogatories indicating that Mercy did *not* believe a third-party was involved) and directed Ms. Dansberry back to the previous "unknown" answer. Mercy's obtuse and circular responses make it impossible to ascertain any substantive insights at all, leaving everything to the imagination. What exactly is "unknown" to Mercy? Is the individual in question himself unknown to Mercy? Or does Mercy know who the person is, just not whether he is an employee? If Mercy believes neither a third-party nor a Mercy employee transported Ms. Dansberry, what other possibilities exist? And why did Mercy initially believe that a third-party did not transport Ms. Dansberry, but now seems to conclude that it did?

{¶10} For the third interrogatory, and despite its previous claims that the question was vague, ambiguous, and confusing, Mercy brought to light for the first time the names of 16 people authorized to transport patients during the month of August 2018. While that represented progress, Mercy declined to provide any information on any of these individuals, *including one person named Bryan*. While we do not know whether this individual actually transported Ms. Dansberry at the time of her injury, it sure seems like a promising place to start in the absence of any other information from Mercy. Still flummoxed, Ms. Dansberry renewed her Civ.R.

6

56(F) request for additional time to perform the due diligence Mercy refused to do—depose all 16 people authorized to drive that month and figure out who drove Ms. Dansberry.

{¶11} At the very least, Ms. Dansberry posited, she should be allowed to depose the person listed by Mercy named "Bryan Henderson" in light of her belief that the person's first name was Bryan. The trial court denied Ms. Dansberry's request for a continuance to conduct additional discovery, and it granted summary judgment in favor of Mercy. In its decision, the trial court noted that although the exact identity of the person who transported Ms. Dansberry was unknown, it was "clearly a Mercy employee." Ms. Dansberry brings three assignments of error on appeal. In her first assignment of error, Ms. Dansberry contends that the trial court erred in refusing her request for additional time to conduct discovery. We agree.

II.

{¶12} Ms. Dansberry's first assignment of error argues that the trial court erred by denying her Civ.R. 56(F) motion for additional time to depose the witnesses identified as the potential transport driver. "Under Civ.R. 56(F), a party opposing a motion for summary judgment may move for a continuance where that party needs more time to conduct discovery." *Taft, Stettinius, & Hollister, LLP v. Calabrese*, 2016-Ohio-4713, 69 N.E.3d 72, ¶ 28 (1st Dist.). " 'The decision to allow additional time under Civ.R. 56(F) falls within the trial court's sound discretion.' " *Bank of Am. NA v. Omega Design/Build Group, LLC,* 1st Dist. Hamilton No. C-100018, 2011-Ohio-1650, ¶ 40. "Such discretion, however, is not without limits. Although unusual, appellate courts will reverse a discovery order when the trial court has erroneously denied or limited discovery." *Mauzy v. Kelly Servs.*, 75 Ohio St.3d 578,

592, 664 N.E.2d 1272 (1996). This case is exactly the sort of situation that Civ.R. 56(F) is designed to address. Despite Ms. Dansberry's diligence (and despite court orders) Mercy succeeded in hiding critical facts necessary not only to assist Ms. Dansberry's opposition to summary judgment, but to discern whether any genuine issues of material fact existed. Instead, Mercy's conduct prevented Ms. Dansberry from getting her case out of the starting gate.

{¶13} The importance of the identity of the driver cannot be understated—if he is an employee, Mercy argues that Ms. Dansberry's claim would be time-barred. R.C. 2305.113(A) ("[A]n action upon a medical, dental, optometric, or chiropractic claim shall be commenced within one year after the cause of action accrued."). But if the unknown transport driver is not an employee, then he might not qualify as a medical provider per the statute. *See Notario v. Am. Natl. Red Cross*, S.D.Ohio No. 2:20-cv-6034, 2021 U.S. Dist. LEXIS 159913, *5 (Aug. 24, 2021) ("The list provided in Ohio Revised Code § 2305.113 is exhaustive; a claim is not a medical claim if it is brought against a provider not enumerated in the statute."). In that scenario, Ms. Dansberry may be able to avail herself of an ordinary negligence claim for relief subject to a two-year statute of limitations. R.C. 2305.10(A) ("[A]n action for bodily injury or injuring personal property shall be brought within two years after the cause of action accrues.").[1]

{¶14} Mercy contends this is all much ado about nothing because Ms. Dansberry's claim arose out of medical diagnosis, care, or treatment. To be sure, that language constitutes *part* of the analysis of whether a medical claim exists. In

---

[1] We caution that we take no position on any of these scenarios since the record is not complete on the salient points, and thus we cannot adequately analyze whether the statute of limitations bars the claim.

Mercy's view, Ms. Dansberry's injury arose during necessary medical care, and that alone brings it within the purview of medical claims under R.C. 2305.113. That is plainly not Ohio law. "The term 'medical claim' as defined in R.C. 2305.113(E)(3) has two components that the statute states in the conjunctive: (1) the claim is asserted against one or more of the specifically enumerated medical providers and (2) the claim arises out of medical diagnosis, care, or treatment." *Estate of Stevic v. Bio-Medical Application of Ohio, Inc.*, 121 Ohio St.3d 488, 2009-Ohio-1525, 905 N.E.2d 635, ¶ 18. In other words, the one-year statute of limitations does not apply when only one portion of R.C. 2305.113(E)(3) is satisfied. *Id.* at ¶ 17. The identity of the driver goes to the very heart of the statute and Ms. Dansberry deserves time to obtain the (long overdue) answer.

{¶15} The trial court denied Ms. Dansberry's request for a continuance based on a number of flawed premises. To begin with, it indicated that Ms. Dansberry testified the individual who placed her in the van wore Mercy clothing. But that is not accurate. As we indicated above, Ms. Dansberry provided a detailed description of "Bryan," but specifically responded that she did not know if his attire indicated his employer.[2] Next, the trial court relied on Mercy's statement in the first set of interrogatories that it "did not believe a third party was involved in Dansberry's transportation." But Mercy later backpedaled on this (somewhat equivocal)

---

[2] Some of the confusion may stem from the fact that Ms. Dansberry's daughter offered in her deposition that a person named Bryan would sometimes transport Ms. Dansberry while wearing a shirt with the Mercy West blue and green logo. But this fails to illuminate matters since the daughter was not present on the day in question, and her testimony suggested that when a Mercy West employee provided the transportation, they did so in a gray van with the blue and green Mercy logo, but third party providers picked up Ms. Dansberry in white and red vans. Ms. Dansberry testified the vehicle that transported her on the day in question was a white van reading "Ohio Valley."

assertion. In the second set of interrogatories, it represented that it did *not* believe the person was an employee of Mercy. Both of these answers cannot be true, and Mercy leaves us in the dark as to the reasons for the inconsistency. Regardless, Mercy cannot take inconsistent factual positions on a critical question, prevent discovery on the underlying reasons behind the inconsistency, and secure summary judgment without any real discovery scrutiny. *See Disciplinary Counsel v. Stafford*, 128 Ohio St.3d 446, 2011-Ohio-1484, 946 N.E.2d 193, ¶ 56 ("Our system of discovery was designed to increase the likelihood that justice will be served in each case, not to promote principles of gamesmanship and deception in which the person who hides the ball most effectively wins the case."). We should also point out that Mercy's answers are further problematic because they rely on "beliefs," rather than factual assertions. A party cannot simply hide behind beliefs or hopes when answering discovery consistent with Civ.R. 56. *Cam Dev. Co. v. Huntington Natl. Bank,* 10th Dist. Franklin No. 18AP-6, 2019-Ohio-1136, ¶ 9 ("[T]he moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the non-moving party has no evidence to support its claims.").

{¶16} Finally, the trial court noted that Mercy "identified various employees who were authorized to transport [Ms.] Dansberry on the date of the incident." But Mercy's response here begs more questions than it answers. Mercy declined to provide any type of document, employment record, or timekeeping sheet which might enable Ms. Dansberry to evaluate whether any of these individuals actually drove her on the day in question. And these individuals may well be irrelevant if Mercy's second assertion (that it does not believe it employed the driver) proves

accurate. Providing a list of potential drivers does not absolve Mercy of further discovery obligations in this case.

{¶17} We acknowledge that discovery is often complicated. A party may seek discovery on an issue that falls beyond the scope of the case or that seeks data that does not exist. In this case, however, the information in question sat at the heart of the case and represented information to which Mercy, as a prominent healthcare provider in this community, certainly should have access. At oral argument, Mercy's counsel acknowledged that Mercy does not know whether the person transporting Ms. Dansberry was a Mercy employee (at odds with the trial court's conclusion) and went so far as to indicate that the answer was "unknowable." If the answer truly is "unknowable," then Mercy should have been up front with Ms. Dansberry and the court on this point at the outset of the case. This case is an unfortunate illustration of why civil litigation costs so much and takes so long. The parties have wasted significant time and resources on discovery misadventures, and this case has consumed considerable judicial resources only to return to where the parties should have started almost two years ago. We accordingly sustain Ms. Dansberry's first assignment of error, and we remand this matter to the trial court for further proceedings.

{¶18} In her second assignment of error, Ms. Dansberry asserts the trial court erred in determining the individual was a Mercy employee and granting summary judgment in favor of Mercy. In her third assignment of error, Ms. Dansberry argues the evidence presented was insufficient to determine whether this was a medical claim pursuant to R.C. 2305.113(E)(3). Because Ms. Dansberry should have received additional time to complete discovery (and responsive discovery

11

answers), the issue of summary judgment was premature and we need not get bogged down with the intricacies surrounding whether Ms. Dansberry's claim constitutes a "medical claim" given the inchoate nature of the record. Accordingly, we decline to address the second and third assignments of error as moot.

\* \* \*

{¶19} In light of the foregoing analysis, we conclude that the trial court abused its discretion in denying Ms. Dansberry further discovery, and the first assignment of error is sustained. We decline to address the second and third assignments of error as moot. The trial court's judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed and cause remanded.

**MYERS, P. J.,** and **CROUSE, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.