[Cite as *Travis v. Tall Tall Properties, L.L.C.*, 2023-Ohio-3370.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| HERMAN M. TRAVIS, | : | APPEAL NOS. C-220571 |
| | | C-220572 |
| and | : | TRIAL NO. A-2102130 |
| TIFFANY D. TRAVIS, | : | *O P I N I O N.* |
| Plaintiffs-Appellants, | : | |
| vs. | : | |
| TALL TALL PROPERTIES, LLC, | : | |
| and | : | |
| CHRIS CASTLEMAN, | : | |
| Defendants-Appellees, | : | |
| and | : | |
| DAVID J. HANNAH, | : | |
| Defendant. | : | |

Civil Appeals From:  Hamilton County Court of Common Pleas

Judgments Appealed From Are:  Affirmed

Date of Judgment Entry on Appeal: September 22, 2023

*Hoschscheid Law LLC* and *Tabitha M. Hochscheid*, for Plaintiffs-Appellants,

*Robbins, Kelly, Patterson & Tucker, LPA, Matthew C. Curran* and *Elizabeth M. Johnson*, for Defendant-Appellee Tall Tall Properties, LLC.,

*Arnzen, Storm & Turner, P.S.C.*, and *Aaron A. VanderLaan*, for Defendant-Appellee Chris Castleman.

CROUSE, **Presiding Judge.**

{¶1}   Plaintiffs-appellants Herman and Tiffany Travis appeal the trial court's grants of summary judgment to defendants-appellees Tall Tall Properties, LLC, ("TTP") and Chris Castleman on the Travises' claims for breach of contract and fraudulent misrepresentation. On appeal, they contend that the trial court erred in denying several discovery-related motions and in granting summary judgment to the appellees. Finding these arguments to be without merit, we affirm the trial court's judgments.

*1.  Factual and Procedural Background*

{¶2}   In December of 2018, the Travises became first time homeowners when they purchased a home from TTP. The home, 463 Marion Road, was listed for sale by Castleman, TTP's real estate agent. The Travises were represented in the transaction by their own real estate agent, David Hannah. On November 10, 2018, the Travises signed a contract to purchase the home for $98,900. The contract contained a real estate inspection contingency, providing that the Travises had ten days to conduct an inspection and that, if the inspection revealed a "material defect" to the property and the parties could not negotiate an agreement in settlement of the condition, the contract could be terminated.

{¶3}   On November 12, 2018, the Travises were given a Residential Property Disclosure Form ("RPDF") that was filled out by Nicholas Vehr, the owner of TTP. Section D of the RPDF concerned water intrusion. Vehr checked "yes" on the form in response to the question asking, "Do you know of any previous or current water leakage, water accumulation, excess moisture or other defects to the property, including but not limited to any area below grade, basement or crawl space?" In

addition to checking yes, Vehr wrote on the form that "water leaked in basement. Added downspout drainage to flow away from house in Nov."

{¶4} Section E of the RPDF concerned structural components of the home, including the foundation, basement/crawl space, floors, and interior and exterior walls. On this section of the form, Vehr checked "yes" in response to a question asking, "Do you know of any previous or current movement, shifting, deterioration, material cracks/settling (other than visible minor cracks or blemishes) or other material problems with [these structural components]?" Vehr also wrote on the space provided on the form "cracks in interior plaster walls. Was not structural."

{¶5} In accordance with the contract, the Travises had an inspection conducted on the home. As relevant to this appeal, the inspection report issued to the Travises revealed several potential problems with the property. The report indicated that "settling cracks and water intrusion can be seen located at garage" and advised that a qualified contractor should further inspect and make any needed repairs. The report also noted that "signs of fungi growth and moisture intrusion are present in basement" and recommended that an expert be contacted for correction. Last, the report stated that "settling cracks that reveal daylight can be seen located at basement" and again recommended that a qualified contractor inspect and make any necessary repairs.

{¶6} After receiving the inspection report, the Travises prepared and gave to TTP and Castleman a document referred to by the parties as Addendum #1. This document listed various problems found during the inspection that needed to be replaced or repaired by a licensed contractor. Included in the items listed on the addendum were the cracks and water intrusion in the garage, the fungi growth and

moisture intrusion in the basement, and settling cracks that revealed daylight in the basement.

{¶7} In response, TTP and Castleman prepared Addendum #1A. This document provided a list of repairs that TTP agreed to have performed on the property by a licensed contractor. Included in the list were the following items: "fill/seal all visible settlement cracks on basement foundation walls," and "clean/scrub areas where water penetration was visible." All parties agreed to and signed Addendum #1A.

{¶8} The Travises did not personally inspect the property prior to closing to ensure that all repairs referenced in Addendum #1A had been performed. Instead, their real estate agent inspected the property and informed them that all required repairs had been made. Closing occurred on the property on December 31, 2018, but the Travises did not enter the home until January 6, 2019. Shortly after moving in, the Travises began to have concerns that all repairs required by Addendum #1A had either not been made or had not been adequately made. According to Tiffany Travis, it looked like the cracks in the walls had been painted over, and the paint began to peel off the walls within a couple of months of the Travises taking residence. Herman Travis likewise noticed that paint in the basement started to peel off the walls after a rain and that the basement still suffered from water intrusion, requiring the Travises to place their belongings in plastic bins to prevent damage.

{¶9} The Travises filed suit against TTP, Castleman, and Hannah. The complaint contained a claim for breach of contract against TTP.[1] In support of this claim, the complaint alleged that TTP failed to adequately disclose the structural damage which it either knew or should have known existed. It also alleged that

---

[1] The sole claim for negligence against Hannah was ultimately dismissed with prejudice.

although TTP disclosed the water leakage in the basement, it misrepresented that the leakage was remedied by diverting down spouts. It further alleged that TTP failed to repair the addendum items in a workmanlike manner, resulting in the Travises incurring significant repair bills and owning a house that was worth far less than its purchase price.

{¶10} The complaint also asserted a claim for fraudulent misrepresentation against both TTP and Castleman. In support of this claim, the complaint alleged that despite having a duty to do so, the defendants failed to disclose in the RPDF the structural damage to the foundation and the need for repairs, and that they did so with the intent to deceive the Travises into relying on the representation that all items described in the inspection were rectified. It further alleged that the Travises justifiably relied on the RPDF and were damaged by overpaying for the property.

{¶11} TTP moved for summary judgment on April 26, 2022. On May 24, 2022, the Travises filed a request for both additional discovery pursuant to Civ.R. 56(F) and additional time to reply to TTP's motion for summary judgment. The request noted that the case-scheduling order had been modified and that discovery was not set to be completed until November of 2022. It also explained that the Travises were attempting to resolve discovery issues with TTP and that they wished to depose Vehr and any individuals who worked on the property. The trial court denied the Travises' Civ.R. 56(F) request.

{¶12} Castleman filed his own motion for summary judgment on August 12, 2022. Approximately one week later, on August 19, 2022, the Travises filed a motion to compel discovery from TTP. In the motion, the Travises sought to compel production of the repair and remodeling records from the date of TTP's purchase of

6

the property through November 2019, as well as all communications between the parties in this case. The motion was accompanied by an affidavit from the Travises' counsel stating that all nonjudicial efforts to resolve the discovery dispute had been exercised. The Travises additionally filed responses in opposition to both pending motions for summary judgment.

{¶13} After conducting a hearing, the trial court granted both TTP and Castleman's summary-judgment motions.

### 2. Civ.R. 56(F) Motion

{¶14} In their first assignment of error, the Travises argue that the trial court erred by denying their request for additional discovery under Civ.R. 56(F) and for additional time to reply to TTP's motion for summary judgment.

{¶15} We review a trial court's decision to allow additional time for discovery under Civ.R. 56(F) for an abuse of discretion. *Dansberry v. Mercy Health-West Park*, 1st Dist. Hamilton No. C-210304, 2022-Ohio-360, ¶ 12, citing *Bank of Am. NA v. Omega Design/Build Group, LLC*, 1st Dist. Hamilton No. C-100018, 2011-Ohio-1650, ¶ 40. An abuse of discretion occurs where the trial court's decision was unreasonable or arbitrary. *Sharif v. Sharif*, 1st Dist. Hamilton No. C-210472, 2022-Ohio-2856, ¶ 13, citing *Kane v. Hardin*, 1st Dist. Hamilton No. C-180525, 2019-Ohio-4362, ¶ 6.

{¶16} Civ.R. 56(F) provides that:

Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a

continuance to permit affidavits to be obtained or discovery to be had

or may make such other order as is just.

**{¶17}** Pursuant to Civ.R. 56(F), "a party opposing a motion for summary judgment may move for a continuance where that party needs more time to conduct discovery." *Taft, Stettinius, & Hollister, LLP v. Calabrese*, 2016-Ohio-4713, 69 N.E.3d 72, ¶ 28 (1st Dist.). If such a motion is filed, it "must be supported by an affidavit establishing the reasons for the requested continuance." *Id.*; Civ.R. 56(F).

**{¶18}** The Travises failed to file an affidavit supporting their request for additional time to conduct discovery. For this reason alone, the trial court did not abuse its discretion in denying the motion. *See Calabrese* at ¶ 28 ("the trial court did not err in denying [the Civ.R. 56(F) motion] since the motion was not supported by an accompanying affidavit, as required").

**{¶19}** But even if the Travises could get past the roadblock caused by the failure to file an accompanying affidavit, we still find no abuse of discretion in the trial court's denial of their motion. The denial of a Civ.R. 56(F) motion "should be upheld if the party fails to show that the requested discovery would have precluded summary judgment." *Midland Funding LLC v. Farrell*, 1st Dist. Hamilton No. C-120674, 2013-Ohio-5509, ¶ 10.

**{¶20}** In their motion, the Travises explained that TTP's responses to their written discovery requests were limited and contained many objections, and that they sought additional time to resolve these issues, obtain documents from TTP, and to depose Vehr and any individuals who worked on the property. The Travises did, ultimately, take Vehr's deposition on July 28, 2022. The Travises also filed a notice that they would be deposing Mark Marrs, who performed the repairs on the property

for Vehr, on August 15, 2022. The record does not establish if Marrs was in fact deposed, but such a deposition was never filed and made part of the record.

**{¶21}** Following our review of the record, we find that the documents that the Travises sought additional time to obtain concerning repairs that had been made to the property prior to it being listed for sale were not relevant to the parties' dispute and the claims asserted in the complaint. The complaint alleged that TTP failed to make adequate disclosures on the RPDF and failed to repair the issues that it was obligated to fix under Addendum #1A. Documents pertaining to work that TTP had done on the property prior to listing it for sale, including installing down spouts, are not relevant to these issues. The Travises have failed to establish that the requested discovery would have precluded summary judgment, and, on this record, we can find no abuse of discretion in the trial court's denial of their motion.

**{¶22}** To the extent that the Travises argue that the trial court erred in granting summary judgment before discovery was complete, we find such an argument to be without merit. "Where a party moves for summary judgment and the nonmoving party argues that discovery is incomplete or a ruling would be premature, this court reviews the trial court's decision to decide the motion for an abuse of discretion." *Anderson v. Jancoa Janitorial Servs.*, 12th Dist. Butler No. CA2019-01-018, 2019-Ohio-3617, ¶ 14. Here, where the Travises were able to depose Vehr and where the documents that the Travises sought to obtain during the requested extension of time for discovery were not relevant to the claims asserted in the complaint, we find no abuse of discretion by the trial court.

### 3. *Motion to Compel*

**{¶23}** In their second assignment of error, the Travises argue that the trial court erred by waiting until after it granted defendants' summary-judgment motions to rule on the motion to compel, and then denying it as moot. We review the trial court's ruling on a motion to compel for an abuse of discretion. *Ijakoli v. Alungbe*, 1st Dist. Hamilton No. C-210366, 2022-Ohio-2423, ¶ 34.

**{¶24}** The Travises sought to compel production of the repair and remodeling records from the date of TTP's purchase of the property through November 2019. The motion was accompanied by an affidavit from the Travises' counsel. As explained in our analysis of the Travises' first assignment of error, the records that they sought to compel were not relevant to the claims asserted in the complaint. We accordingly find no abuse of discretion in the trial court's denial of the motion to compel and overrule the second assignment of error.

### 4. *Grant of Summary Judgment*

**{¶25}** In their third assignment of error, the Travises argue that the trial court erred in granting summary judgment when evidence of material facts was being unreasonably withheld and when a motion to compel was pending.

**{¶26}** To the extent that this assignment of error implicates discovery issues and the timing of the trial court's rulings, we have already resolved those arguments in our resolution of the first two assignments of error. Turning to the merits of the trial court's grants of summary judgment to TTP and Castleman on the claims for breach of contract and fraudulent misrepresentation, we review the trial court's decisions de novo. *Collett v. Sharkey*, 1st Dist. Hamilton No. C-200446, 2021-Ohio-2823, ¶ 8. "Summary judgment is appropriately granted when there exists no genuine issue of

material fact, the party moving for summary judgment is entitled to judgment as a matter of law, and the evidence, when viewed in favor of the nonmoving party, permits only one reasonable conclusion that is adverse to that party." *Id.*, citing *State ex rel. Howard v. Ferreri*, 70 Ohio St.3d 587, 589, 639 N.E.2d 1189 (1994).

### 5. Claim for Breach of Contract

**{¶27}** The elements of a claim for breach of contract are "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *White v. Pitman*, 2020-Ohio-3957, 156 N.E.3d 1026, ¶ 37 (1st Dist.), quoting *Becker v. Direct Energy, LP*, 2018-Ohio-4134, 112 N.E.3d 978, ¶ 38 (2d Dist.).

**{¶28}** The record established that the parties had a contract for the sale of the property. TTP disclosed on the RPDF the issues with the water leakage in the basement and the cracks on the interior walls. The Travises had an inspection conducted, which revealed the water intrusion and cracks that TTP had disclosed on the RPDF and advised the Travises to have a qualified contractor inspect the areas. Despite this advisement, the Travises did not engage in any further inspection of the identified areas. The record further established that TTP, through Addendum #1A, agreed to perform certain repairs on the property, and that the Travises closed on the property after accepting a representation from their own real estate agent that the required repairs had been performed.

**{¶29}** The cases of *Nunez v. J.L. Sims Co.*, 1st Dist. Hamilton No. C-020599, 2003-Ohio-3386, and *Roberts v. McCoy*, 2017-Ohio-1329, 88 N.E.3d 422 (12th Dist.), involve similar situations and are instructive. In *Nunez*, the buyers of a piece of real estate sued the sellers and the real estate agents who dually represented both parties, raising various claims concerning the defendants' failure to make adequate lead-

based-paint disclosures. *Nunez* at ¶ 2. The complaint contained two claims for breach of contract. On those claims, this court held that:

> With regard to the contract claims, on this record, the sellers disclosed everything that they had actual knowledge of with respect to the presence of lead hazards, including that the residence was of an age where such hazards were likely present, and they had no duty to perform any inspections prior to offering the property for sale. The Nunezes were free to conduct any buyer-paid-for inspections they wished. Reasonable minds could have only concluded that the Nunezes were not the victims of either a breach of contract or a breach of a fiduciary duty.

*Id*. at ¶ 24.

**{¶30}** In the *Roberts* case, Roberts purchased property from McCoy, who disclosed in an RPDF that "it appears the previous owner unhooked [the] laundry room sink and let the basement flood, all water damaged materials were removed" and that "I don't believe there is any mold in the home." *Roberts* at ¶ 3. Roberts later discovered mold and sued McCoy. *Id*. at ¶ 5-6. She asserted, among other claims, a claim for breach of contract relating to the representations made in the RPDF. *Id*. at ¶ 6. The Twelfth District recognized that McCoy was only required to disclose defects to the property that she had actual knowledge of, and it held that because no genuine issues of material fact existed as to whether McCoy had actual knowledge of the presence of mold, summary judgment was appropriately granted on the breach-of-contract claim. *Id*. at ¶ 27.

**{¶31}** In this case, no genuine issues of material fact exist as to whether TTP had knowledge of conditions that it failed to disclose. Nor do any issues of fact exist as

to whether TTP adequately disclosed the water intrusion and structural issues with the property. *See id.*; *Nunez* at ¶ 24. Rather, TTP disclosed the issues of which it was aware, as well as information about previous steps it had taken to correct the problems. Most telling, perhaps, is that in addition to receiving this information from TTP about the water intrusion and cracking on interior walls, the Travises were presented with the same information following an inspection and elected not to have a contractor further look into the issues of concern. Even if TTP's statement on the RPDF that the cracks on the interior walls were not structural could be considered a misrepresentation, the Travises were put on notice via the inspection report that there were structural concerns with the property.

**{¶32}** As to the allegation that TTP failed to adequately perform the repairs required by Addendum #1A, the Travises had the ability to inspect the Addendum #1A repairs performed by TTP and elected not to do so, instead relying on a representation from their real estate agent that they were adequate. They accepted the repairs and closed on the contract for purchase of the home.

**{¶33}** On this record, we hold that the trial court did not err in granting summary judgment to TTP on the claim for breach of contract.

### 6. *Claim for Fraudulent Misrepresentation*

**{¶34}** The claim for fraudulent misrepresentation was asserted against both TTP and Castleman. The elements of a claim for fraudulent misrepresentation are (1) a misrepresentation or concealment when there is a duty to disclose, (2) that is material to the transaction, (3) made falsely, or with knowledge of or reckless disregard as to its falsity, (4) with the intent to mislead another into relying on it, (5) justifiable reliance on the misrepresentation or concealment, and (6) resulting injury

proximately caused by the reliance. *Greene v. Whiteside*, 181 Ohio App.3d 253, 2009-Ohio-741, 908 N.E.2d 975, ¶ 27 (1st Dist.).

{¶35} Here, we have no problem affirming the trial court's grant of summary judgment on this claim because the record contains no genuine issues of material fact as to whether the Travises justifiably relied on any misrepresentation or concealment by TTP or Castleman—they did not. Not only did TTP disclose the water intrusion and structural issues, but the inspection report provided to the Travises identified these same issues and advised that a qualified contractor should examine the areas of concern. The Travises elected not to have an extra inspection performed per the report's recommendation. Where their own inspection identified the issues of which they now complain, the Travises cannot claim justifiable reliance on any alleged misrepresentations or concealment made by TTP or Castleman. *See Ponder v. Culp*, 9th Dist. Summit No. 28184, 2017-Ohio-168, ¶ 15 (where plaintiffs were put on notice by a home inspector of potential water problems in the purchased property, they could not have justifiably relied on defendants' alleged nondisclosures and misrepresentations); *Kramer v. Ratterman*, 161 Ohio App.3d 363, 2005-Ohio-2742, 830 N.E.2d 416, ¶ 22 (1st Dist.) (where defendants disclosed defects to the property as required by law and plaintiffs chose not to have an inspection where one was clearly warranted, plaintiffs could not claim justifiable reliance on the defendants' representations).

{¶36} The Travises claim for fraudulent misrepresentation additionally fails because it is barred by the doctrine of caveat emptor. This doctrine "applies to sales of real estate relative to conditions open to observation." *Layman v. Binns*, 35 Ohio St.3d 176, 177, 519 N.E.2d 642 (1988), quoting *Traverse v. Long*, 165 Ohio St. 249, 252, 135

N.E.2d 256 (1956). The purpose of the doctrine is to provide finality in the sales of real estate, as without it "nearly every sale would invite litigation instituted by a disappointed buyer." *Id.* It places the responsibility on buyers to discover patent defects. *Kramer* at ¶ 13. To rely on the doctrine of caveat emptor, the following conditions must be established: "(1) the defect must be open to observation or discoverable on reasonable inspection, (2) the purchaser must have an unimpeded opportunity to examine the property and (3) the vendor may not engage in fraud." *Layman* at 177.

{¶37} The water intrusion and structural issues that were manifested by the cracks in the interior walls were open to observation and were, in fact, observed by the Travises' inspector and noted in the inspection report. The Travises indisputably had an unimpeded opportunity to examine the property and did engage in such examination. While the Travises contend that the doctrine of caveat emptor is inapplicable because TTP and Castleman acted fraudulently, the record does not support this contention. Rather, these issues with the property were disclosed on the RPDF.

{¶38} We accordingly hold that the trial court did not err in granting summary judgment on the claim for fraudulent misrepresentation. The third assignment of error is overruled, and the judgments of the trial court are affirmed.

Judgments affirmed.


**BERGERON** and **KINSLEY, JJ.,** concur**.**


Please note:
    The court has recorded its own entry on the date of the release of this opinion.